USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUITT ____________________ No. 93-1274 UNITED STATES OF AMERICA, Appellee, v. AURELIO VIEIRA-CANDELARIO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Boudin, Circuit Judge, _____________ Coffin and Campbell, Senior Circuit Judges. _____________________ ____________________ Damon M. D'Ambrosio, by Appointment of the Court, with whom _____________________ Martin D. Harris, Esquire, Ltd. was on brief for appellant. _______________________________ Stephanie S. Browne, Assistant United States Attorney, with whom ___________________ Edwin J. Gale, United States Attorney, and Craig N. Moore, Assistant _____________ _______________ United States Attorney, was on brief for the United States. ____________________ September 28, 1993 ____________________ CAMPBELL, Senior Circuit Judge. Defendant- _______________________ appellant Aurelio Vieira-Candelario was indicted in the United States District Court for the District of Rhode Island for unlawful reentry into the United States following deportation, in violation of 8 U.S.C. 1326. Vieira moved to quash the indictment and to dismiss, collaterally attacking the deportation order upon which the indictment was based. The district court denied the motions. United States _____________ v. Vieira-Candelario, 797 F. Supp. 117 (D.R.I. 1992). Vieira _________________ entered into a plea agreement in which he pleaded guilty to the indictment but reserved the right to appeal from the denials of his motions to quash the indictment and to dismiss. We affirm. I. I. Vieira, a native and citizen of the Dominican Republic, lived in the United States as a lawful permanent resident alien for almost twenty-six years. His wife and children are United States citizens, and Vieira himself served in the United States Army during the Vietnam-war era. Vieira, however, was convicted in 1989 of two drug-related offenses. One of these was for possession of heroin with intent to deliver, an aggravated felony. Vieira's convictions made him deportable under the Immigration and Naturalization Act ("the Act"). See ___ 241(a)(4)(B) (aggravated felony), now codified as 8 U.S.C. -2- 1251(a)(2)(A)(iii)(1991); and 241(a)(11) (controlled substance violation), now codified as 8 U.S.C. 1251(a)(2)(B)(i) and (ii)(1991). After a hearing on September 20, 1989, an immigration judge entered an order deporting Vieira. The judge ruled that Vieira was ineligible to seek discretionary relief under 212(c) of the Act, 8 U.S.C. 1182(c), as aggravated felons were ineligible for such relief. The judge advised Vieira that any appeal from this order had to be filed by October 2, 1989. The next day, Vieira filed a notice of appeal with the Board of Immigration Appeals ("the BIA"). As grounds for the appeal, Vieira specifically challenged the judge's ruling on the unavailability of 212(c) relief, claiming the judge was wrong as a matter of law. That issue was never reached because on October 24, 1989, Vieira voluntarily withdrew his appeal. At all times during this process, Vieira was represented by counsel. Vieira was deported on October 27, 1989. On March 24, 1992, INS agents found Vieira in Providence, Rhode Island, took him into custody, and charged him with violating 8 U.S.C. 1326. In the present criminal proceeding, Vieira seeks collaterally to attack the original order of deportation, arguing that it cannot properly serve as the basis for his indictment under 1326. -3- II. II. Under section 212(c) of the Act, certain aliens who have legally resided in the United States for seven years or more may seek relief from deportation because of family ties, long term residence, service in the armed forces, and the like. See generally, Matter of Marin, 16 I. & N. Dec. 581 _____________ ________________ (1978). As written, section 212(c) literally affords relief only to long-term legal aliens who temporarily leave the United States and who, but for 212(c), would be inadmissible upon return as a result of some violation of law. Nevertheless, for reasons buried in the history of immigration law, 212(c) relief is also available to some legal aliens who have not left the country but who become subject to deportation as a result of criminal convictions. See Campos v. I.N.S., 961 F.2d 309, 312-13 (1st Cir. 1992); ___ ______ ______ Francis v. I.N.S., 532 F.2d 268 (2d Cir. 1976). Such relief _______ ______ is only available, however, if the ground for deportation is one for which an alien could initially have been excluded ________ from the country under section 212(a) of the Act, 8 U.S.C. 1182(a). See Campos, 961 F.2d at 312-15 (refusing to extend ___ ______ 212(c) relief to alien charged with illegal possession of a firearm, an offense not listed in 212(a)). At Vieira's deportation hearing, the immigration judge held that Vieira was, as a matter of law, ineligible to apply for discretionary relief under section 212(c). The -4- immigration judge believed, erroneously as it now appears, that Vieira's aggravated felony conviction was an offense for which there was no corresponding ground of excludability under section 212(a). The judge based his decision on the BIA opinions of Matter of Wadud, 19 I. & N. Dec. 182 (1984) ________________ and Matter of Granados, 16 I. & N. Dec. 726 (1979), in which __________________ felons were held to be ineligible for section 212(c) relief because their offenses (which were of a type different from Vieira's heroin offense here) were not specifically listed in section 212(a). The district court found, and the government now concedes, that the immigration judge was mistaken insofar as he determined that there was no corresponding ground for excludability in section 212(a) of Vieria's aggravated drug offense. See Matter of Meza, Int. Dec. 3146 (BIA May 22, ___ ______________ 1991). Had Vieira pursued his appeal, he would likely have been allowed to seek discretionary section 212(c) relief although with what result on the merits we cannot, of course, know. In seeking to quash and dismiss his present indictment for unlawful reentry following deportation, Vieira does not attack the deportation order on the ground that it was error at the time of the deportation hearing to have denied him an opportunity to petition under section 212(c), but rather contends that, while the denial may have been -5- correct then, it was subsequently rendered incorrect by a change in the law. In 1990, after Vieira had been deported, Congress amended section 212(c) to provide that discretionary relief would not be available to an alien who had been ___ convicted of an aggravated felony and had served five years or more in prison. See The Immigration Act of 1990, Pub. L. ___ No. 101-649, 511(a), 104 Stat. 4978, 5052. Vieira argues that this amendment must be construed, by implication, to mean that aggravated felons who had not served five years in ___ prison like Vieira were eligible for section 212(c) relief even if their offenses were not listed in section 212(a). Vieira points to Matter of Meza, Int. Dec. 3146 _______________ (BIA May 22, 1991), as the indicator of the changed policy. There, in a case very similar to Vieira's, the BIA allowed an alien who had been convicted of a drug-related aggravated felony to apply for 212(c) relief. Vieira argues that the purported change in INS policy between the earlier cases of Wadud and Granados and the later case of Meza effectively _____ ________ ____ robbed him of judicial review. In effect, he contends that the allegedly changed policy of the 1990 amendment and the Meza case should be applied retroactively so as to invalidate ____ his deportation order rendered without a 212(c) hearing. We do not find this argument persuasive. The 1990 amendments and Meza do not appear to have signaled any ____ -6- material change in INS policy. To be sure, the 1990 amendment, by cutting off relief to aggravated felons incarcerated for five or more years, recognized by implication that some aggravated felons might otherwise be eligible for 212(c) relief and, indeed, that this eligibility might continue to be true for those not incarcerated for five or more years. But as we noted in Campos, the amendment ______ "said nothing about wanting to enlarge the relief authorized under 212(c)." Campos, 961 F.2d at 315. Congress "can ______ only be said to have expressed a continued desire to limit 212(c) relief to the listed grounds of exclusion." Id. ___ To understand Meza, there is no need to hypothesize ____ any fundamental policy change. The BIA found that drug- _____ related aggravated felonies, for one of which Meza was _______ convicted, were included within a specific subsection of 212(a) describing drug-related offenses. Meza, Int. Dec. ____ 3146 at 3 (holding that a drug-related aggravated felony could provide the basis for relief under 212(a)(23), recodified as 1182(a)(2)(A)(i)(II)). Meza was a ____ straightforward application of the existing law that 212(c) relief was available solely to those offenses specifically listed in 212(a). Meza was entirely consistent with Wadud ____ _____ and Granados, neither of which cases involved aggravated ________ felonies of the particular kind mentioned in 212(a). -7- That Meza did not indicate a change in deportation ____ policy is confirmed by Matter of Hernandez-Casillas, Int. _____________________________ Dec. Att. Gen. March 18, 1991. The Attorney General of the United States reversed a decision of the BIA overruling Wadud _____ and Granados and maintained that 212(c) relief continued to ________ be available only for those offenses specifically identified in section 212(a). This Court recently upheld the Attorney General's construction of section 212(c). Campos, 961 F.2d ______ at 314-15. We agree with the district court and the prosecution that the immigration judge appears simply to have misapplied 212(c) under then-existing doctrine. He should have offered Vieira an opportunity to petition for discretionary relief. Had Vieira pursued his appeal, the BIA presumably would have overruled the immigration judge and allowed Vieira to apply for 212(c) relief, as it did when a similar issue was appealed in Meza. ____ The immigration judge appears regrettably to have committed an error of law in this respect, but it was not the type of error that provides any basis for collateral attack on the judge's deportation order in a subsequent criminal prosecution brought under 8 U.S.C. 1326. To provide such a basis, the error must have violated the alien's due process rights, being "so fundamental" that it "effectively eliminates the right of the alien to obtain judicial review." -8- United States v. Mendoza-Lopez, 481 U.S. 828, 837-39 & n.17, _____________ _____________ 107 S. Ct. 2148, 95 L. Ed. 2d 772 (1987). "Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." Id. ____ ___ at 837-38 (citations omitted) (emphasis in original). Here, in contrast to the situation in Mendoza- ________ Lopez, the immigration judge's putatively erroneous decision _____ did not "effectively" rob Vieira of his right to review. Vieira filed a notice of appeal. He later deliberately withdrew the appeal. He was represented by counsel throughout. As Vieira voluntarily abandoned his right to obtain review of the deportation order, we see no way to hold that he was deprived of meaningful review of the administrative proceeding contrary to the due process clause. The order entered in that proceeding was, therefore, valid and binding on Vieira, who violated it at his peril when he illegally reentered the United States. Affirmed. ________ -9-