**UNITED STATES, Appellee,**

v.

**Devon Wayne SMITH, Defendant–Appellant.**

No. 94–1115.

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 1994.

Decided Sept. 7, 1994.

Certiorari Denied Nov. 14, 1994.

See 115 S.Ct. 529.

Peter Bruce Krupp, Federal Defender Office, Boston, MA, by Appointment of the Court, for appellant.

James Francis Lang, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., Boston, MA, was on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and KEETON,* District Judge.

TORRUELLA, Chief Judge.

Defendant–Appellant Devon Wayne Smith entered a conditional plea of guilty to an indictment charging him with illegally reentering the United States following a deportation order subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On appeal, Smith asserts that the district court erred in denying his motion to dismiss (1) the entire indict-

---

* Of the District of Massachusetts, sitting by designation.

ment because the government unduly burdened his ability to appeal the deportation order underlying the offense, and (2) that part of the indictment based on his prior aggravated felony conviction because that conviction was vacated after the government indicted Smith in this case. We affirm.

## I. BACKGROUND

On January 5, 1983, Smith, a citizen of Jamaica, entered the United States at Miami, Florida, as a visitor for pleasure with authorization to stay until the end of the month. On October 1, 1984, Smith was charged with possession of marijuana with intent to distribute in Dorchester, Massachusetts. Smith was convicted of this offense in Boston Municipal Court ("BMC") on January 30, 1985.

On August 28, 1985, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Smith on the grounds that Smith's conviction subjected him to deportation under Section 241(a)(11) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(11). Several hearings were held on this matter beginning in July of 1987. At one of these hearings, the INS brought an additional charge against Smith: remaining in the United States longer than the one-month period of time granted upon his original admission, an offense subjecting Smith to deportation under Section 241(a)(2) of the INA, 8 U.S.C. § 1251(a)(2). Smith admitted he was deportable on this additional ground, but he contested his deportability on the original § 241(a)(11) charge because he was attempting to have the BMC conviction vacated. Smith chose to challenge the § 241(a)(11) charge, despite the fact that he admitted to his deportability on other grounds, because certain forms of relief that are available under § 241(a)(2) are not available once a defendant is found deportable under § 241(a)(11).

Smith's initial efforts to vacate the BMC conviction were unsuccessful, and on June 30, 1988, an immigration judge found Smith was deportable under both § 241(a)(2) and § 241(a)(11) and ordered Smith's deportation. Smith appealed this ruling on the ground that the judge improperly relied upon an uncertified copy of the BMC conviction.

On September 25, 1989, while the appeal was pending, INS agents arrested Smith for an alleged gun offense. Agents found two 9 mm handguns in Smith's possession after responding to information provided by the Mirimar, Florida, Police Department that Smith had been interviewed and found to possess weapons. The INS knew that Smith had been convicted of carrying a concealed firearm in October of 1988 (Smith pleaded *nolo contendere* to that charge and an adjudication of guilt was "stayed and withheld") and that Smith had been briefly detained by the INS in May of 1989 after being found in possession of a knife during an INS sweep.

After the September 1989 arrest, the INS took Smith into custody and held him in lieu of posting a $25,000 bond. Smith was never officially charged for the gun offense underlying the arrest. Smith then moved for a bond determination. An INS hearing officer ruled on the motion and ordered that Smith be detained without bond. Smith then requested a redetermination of the ruling before an immigration judge. On October 18, 1989, following a hearing, an immigration judge denied Smith's request for a change in his custody status.

Central to this appeal is Smith's allegation that the INS detained him without bail in order to unduly burden his ability to pursue his pending immigration appeal, and to coerce Smith into waving that appeal. Smith offered no direct evidence to support this allegation. He does point out, however, that the record does not indicate that Smith was ever notified of the gun charges against him—charges which were never formally made in the first place—or that Smith was ever given an opportunity to be heard on the alleged gun charges underlying his detention. Smith also points out that, at some point in November of 1989, Smith was transferred from an INS detention center in Florida, where his family, business, and lawyer were located, to El Paso, Texas. Smith's counsel affirmatively asserts in the brief and in prior motions before the court that Smith never had an opportunity to rebut the gun charges, but this assertion is not supported by an

affidavit from Smith himself, or from anyone else involved in the bond hearings.[1]

In any event, faced with a lengthy period of incarceration during the pendency of his immigration appeal, Smith, in consultation with his attorney in El Paso, decided to withdraw his appeal and submit to deportation. A motion withdrawing the appeal, signed by Smith and his attorney, was filed on November 21, 1989, and Smith was deported to Jamaica.

In March of 1992, Smith reentered the United States at Miami. He was subsequently arrested by INS agents in Dorchester, Massachusetts on March 22, 1993. A federal grand jury then returned the indictment for this case on May 13, 1993. Meanwhile, in October of 1993, Smith's current counsel successfully vacated the original 1985 BMC conviction upon which Smith's deportation was originally based.

Smith moved to dismiss the indictment in the present case by collaterally attacking the deportation order and the aggravated felony underlying the charged offenses. A hearing was scheduled, but Smith did not request an *evidentiary* hearing for the motion. Following a hearing on December 9, 1993, the district court denied Smith's motion to dismiss the indictment. Smith's counsel subsequently requested approval of several subpoenas for the purpose of collecting evidence on the collateral attack issue with the intent of litigating the issue at trial. Then, on January 12, 1994, the court granted the government's motion to exclude all evidence of the circumstances surrounding the validity of the deportation proceedings. Later that same day, Smith entered a conditional plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2), reserving for appeal the issues presented here.

## II. ANALYSIS

### A. *Collateral Attack on Deportation: Coerced Waiver of Appeal*

■ To establish an offense under § 1326, the government must prove that the defendant has been previously deported. 8 U.S.C. § 1326(a)(1). A defendant accused of violating § 1326 may collaterally attack the underlying deportation order if the defendant can show that he or she was deprived of the opportunity for *meaningful judicial review* of that deportation order. *United States v. Mendoza–López*, 481 U.S. 828, 839, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) ("Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.").

■ Smith argues that his right to collaterally attack the underlying deportation under *Mendoza–López* was improperly foreclosed by the district court. Smith originally contended in his motion to dismiss that the INS's detention of Smith for an uncharged gun offense effectively denied him the opportunity for meaningful judicial review of the deportation proceeding, and therefore, the proceeding cannot properly serve as the basis for his indictment under 8 U.S.C. § 1326. After denying this motion, the court ruled that Smith could not present evidence on this issue at trial. We find no error in the district court's actions.

We have recently held that a defendant who deliberately and voluntarily waived his right to appeal a prior deportation order under the advice of counsel, is not deprived of meaningful judicial review and thus may not collaterally attack the deportation order during the § 1326 criminal proceedings. *United States v. Smith*, 14 F.3d 662, 665 (1st Cir.1994); *United States v. Vieira–Candelario*, 6 F.3d 12, 15 (1st Cir.1993). In this case, Smith withdrew his appeal of the deportation order under the advice of counsel. Smith

---

1. There is no evidence in the record concerning what was argued before the immigration judge or what basis underlay the judge's decision to uphold the revocation of Smith's bail. Thus, there is no evidence indicating whether or not Smith was actually heard on the gun charges. However, Smith's motion for a bond determination does acknowledge that Smith was detained by the INS on the basis of a gun charge. Although not critical to the resolution of this appeal, one could reasonably infer from his bond motion that Smith did have an opportunity to challenge the gun charges at the bond hearings.

argues, however, that the waiver of his appeal was not deliberate and voluntary, but rather was coerced, and thus his case is distinguishable from the situation in *Smith* and *Vieira–Candelario.* According to Smith, the INS's action of imprisoning him without allowing him to challenge the reason for his incarceration, unconstitutionally burdened his ability to appeal because it required him to suffer an unlawful imprisonment in order to pursue his right to judicial review. The only way to gain his rightful freedom, Smith argues, was by waiving his appeal and accepting deportation.

There are a couple of subsidiary issues surrounding Smith's appeal. The first one is whether any waiver, even if coerced under the most horrendous and fundamentally unfair of circumstances, would preclude a *Mendoza–López*-type challenge to a subsequent criminal indictment under § 1326. We must assume that there are some circumstances in which a coerced and involuntary waiver of an appeal constitutes a denial of the opportunity for meaningful judicial review and thus cannot serve as a bar, under *Smith* and *Vieira–Candelario,* to a collateral challenge of a deportation order. *See Mendoza–López,* 481 U.S. at 839 n. 17, 107 S.Ct. at 2155 n. 17 (noting that abuses such as coerced confessions, biased judging, and knowing use of perjured testimony "could operate, under some circumstances, to deny effective judicial review of administrative determinations").

■ The next question is whether Smith's specific allegations, if true, could constitute sufficiently coercive circumstances so as to effectively deny Smith of meaningful judicial review of his deportation order despite his waiver of an appeal. To the extent Smith alleges that the INS purposefully, as opposed to mistakenly or inadvertently, detained him without probable cause, and without formally charging him or allowing him to subsequently challenge the charges for which he was allegedly detained, for the deliberate purpose of pressuring him into withdrawing his appeal and expediting his deportation, he presents allegations that conceivably might be sufficient to raise a *Mendoza–López* issue in a subsequent criminal case. Although Smith could still pursue his appeal while in prison,

even under such egregious circumstances as the ones he alleges, a court might not be precluded from finding that such circumstances violated the requirement that Smith be afforded meaningful judicial review.

That leaves the issue of whether Smith adequately presented the matter to the district court in a way that would allow the court to make a finding that Smith's allegations are true. There is no evidence in the record to support any aspect of Smith's allegations that he was coerced into waiving his appeal of the deportation order. On the contrary, what evidence does exist indicates that Smith was lawfully detained for weapons violations, that he was given two opportunities to challenge his detention, including a hearing before an immigration judge, and that the INS reasonably believed it had cause to detain Smith because Smith had been picked up for previous weapons violations and because he was found with two 9 mm handguns. The fact that no formal gun charges were brought against Smith and the fact that Smith was transferred from Miami to El Paso do not rise to the level of evidence of deliberate coercion by the INS. In sum, there is no evidence to support a finding that Smith was denied meaningful judicial review of his deportation order.

■ Smith nevertheless contends that (1) the district court did not even consider the merits of his coercion claim, and (2) he tried to present evidence in support of his allegations but the district court prevented him from doing so. As an initial matter, the court made no factual findings or explicit legal findings when it denied Smith's motion to dismiss. At that point, however, Smith had presented no evidence—not even an affidavit from Smith himself—to support his claim of coercion by the INS. Smith also failed to request an evidentiary hearing in conjunction with his motion to dismiss. Having thus failed to establish any factual basis for his claim, the district court was warranted in rejecting Smith's motion for dismissal out of hand. *See* D.Mass.Loc.R. 7.1(A)(2); *United States v. Levasseur,* 704 F.Supp. 1158, 1168 (D.Mass.1989).

Smith argues that even if his motion was properly dismissed, he still had a right to present evidence of the INS's coercion of Smith at trial as an affirmative defense un-

der the *Mendoza–López* doctrine. We find no support for this contention. As with motions to suppress evidence, alleged constitutional infirmities in matters collateral to the elements of the charged offense involve complex questions of both law and fact that are appropriately determined by the court in a preliminary hearing. *Cf. Mendoza–López*, 481 U.S. at 832, 107 S.Ct. at 2152 (affirming circuit court opinion that found due process required a "pretrial review" of the underlying deportation). Although the Ninth Circuit has held that the *Mendoza–López* issue must go to the jury if the issue has not previously been addressed before trial, *United States v. Ibarra*, 3 F.3d 1333, 1334 (9th Cir.1993)—a ruling about which we express no opinion at this point—even that opinion foreclosed a *re* litigation of the issue if already decided by the court on a pretrial motion. *Id.* In this case, the district court granted a preliminary hearing on the *Mendoza–López* issue at which Smith had the opportunity to fully and fairly litigate the issue before the court. If Smith failed to request an evidentiary hearing or otherwise failed to take full advantage of the opportunity afforded to him by the district court, such failure was of his own doing and does not, by itself, warrant a second bite at the apple. Under such circumstances, Smith cannot assert a right to relitigate the *Mendoza–López* issue at trial. Therefore, the court's dismissal of Smith's motion, and its subsequent exclusion of evidence pertaining to Smith's deportation proceedings are affirmed.

### B. *Attack on Aggravated Felony Portion of the Indictment*

■ In his motion to dismiss, Smith also argued that proof of a prior aggravated felony conviction is an element of an offense under 8 U.S.C. § 1326(b)(2).[2] Because Smith's only aggravated felony conviction had been vacated by the state court, Smith argued in the motion that the district court

should dismiss that part of the indictment which referenced the aggravated felony provision, § 1326(b)(2). The district court rejected this argument when it denied the motion.

Subsequent to the proceedings in the district court, we decided *United States v. Forbes*, 16 F.3d 1294, 1297–1300 (1st Cir. 1994), in which we held that § 1326(b) does not establish a separate offense, but rather simply provides a sentence enhancement for those convicted under § 1326(a) (the offense for reentry into the United States after being deported), who had been convicted of an aggravated felony before their deportation. That case controls the present issue. Section 1326(b)(2) is not a separate element of an offense and therefore, the vacation of Smith's underlying felony conviction cannot provide grounds for dismissal of the indictment. The district court's ruling must therefore be upheld.

Smith urges us to reconsider our holding in *Forbes*. We decline to upset that decision and, in any event, are not free to do so as a newly constituted panel. *Broderick v. Roache*, 996 F.2d 1294, 1298 (1st Cir.1993). Furthermore, we note that the district court prudently sentenced Smith as if his aggravated felony did not exist, by implementing a downward departure that, according to the court, "in effect strips out the conviction that has been vacated." Thus, even if the district court had erred in refusing to dismiss the aggravated felony portion of the indictment, which it did not, that error would have been harmless because Smith was never sentenced on the allegedly erroneous count. *United States v. Long*, 894 F.2d 101, 108 (5th Cir. 1990).

*Affirmed.*

---

**2.** 8 U.S.C. § 1326 provides in relevant part:

(a) Subject to subsection (b) of this section, any alien who—
(1) has been arrested and deported or excluded and deported, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States ...
shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.