UNITED STATES of America, Plaintiff,

v.

Henry CIFUENTES–RIASCOS, Defendant.

No. Crim. 95–0004CCC.

United States District Court, D. Puerto Rico.

April 19, 1995.

Guillermo Gil, U.S. Atty., Mará Pabón, Asst. U.S. Atty., for plaintiff.

Benicio Sánchez–Rivera, Federal Public Defender, Laura Maldonado, Asst. Federal Public Defender, for defendant.

### ORDER

CEREZO, Chief Judge.

Before the Court is defendant's motion to dismiss the indictment (**docket entry 12**) and the government's opposition (**docket entry 15**).

Defendant Henry Cifuentes–Riascos ("Cifuentes"), also known as William Allegria and Carlos Otero–Rivera, a Colombian citizen, entered the United States in 1987 as a non-immigrant visitor for pleasure. *Transcript of Deportation Proceedings,* June 7, 1994, p. 1. Cifuentes married an American citizen. On January 24, 1994 defendant was convicted in Hillsborough County, Florida of attempted robbery, delivery of cocaine, and two counts of possession of cocaine. *Transcript,* June 7, p. 1. As a result of this, deportation proceedings were commenced.

On June 7, 1994 Cifuentes appeared before an immigration judge for a deportation hearing. He was supplied with a copy of an order to show cause why he should not be deported, in view of the state convictions. *Id.* On that occasion, the judge granted a continuance because Cifuentes was not represented by counsel. The judge anticipated the possibility that relief might not be available to Cifuentes because of the type of offenses. Nevertheless, he strongly recommended that defendant retain an attorney and advised him that the government would not provide legal assistance and offered a list of organizations that might be able to represent him. *Id.,* p. 3–4. Asked "[w]hat can I do about all this [sic] proceedings?" the Judge advised Cifuentes again to obtain legal counsel. *Id.,* p. 5.

On July 18, 1994 defendant appeared *pro se* before the same judge for the continuation of the hearing. He reminded Cifuentes that he had been advised to obtain legal representation. *Transcript,* July 18, p. 6. Defendant responded that his wife had called the organizations on the list but her calls went unanswered. Again, defendant inquired as to what he should do. The Judge replied that this time the hearing would proceed, but if it seemed that a continuance might be helpful, then the hearing would be postponed. *Id.,* p. 7.

It was established through Cifuentes' sworn testimony and certified copies of the judgments that he had been convicted of the aforementioned offenses by the Florida state courts. *Id.,* pp. 11–12. After considering the evidence, the judge found Cifuentes to be deportable. *Id.,* p. 12. He explained Cifuentes his right to appeal and informed him that the appropriate forms would be provided, if he wished to pursue an appeal. *Id.,* at pp. 15–16. Defendant apparently tried to plead his prior state convictions to the Immigration Judge. *Id.,* at 15. As reflected in the following excerpt of the hearing, the judge stated it was bound by the prior state convictions and referred Cifuentes to appellate state procedures:

> Judge. Well, sir, the Court is bound by the State Court convictions. The only way that those can be overturned is if you go to the State Court process on appeal. But this Court is not a criminal court, it cannot do anything to overturn those convictions even if you believe they were not fair. Again, I ask you (indiscernible) State Courts and their appeal process. If you

would like to file an appeal of my Decision or wish time to think about it, we would give you the appropriate forms for relief. Or if you wish not to appeal, you can tell me that too as well. What would you like to do?

Def. Well, the case of the attempted robbery what I was trying to do I was trying to—I was claiming an amount of money and a vehicle that the man had in his possession that belonged to me.

Judge. All right. But sir, as I said, if [sic] the Court cannot look behind the conviction. The only thing that the Court can do is find that you were convicted of that (indiscernible) State Court. So there's nothing I can do about the convictions if you feel it [sic] was not right. We will give you the appropriate appeals forms for this Decision in the event that you wish to follow through with the Board of Immigration Appeals. Remember, though, if you do so, you must do so within ten days or by July 28th, of 1994.

Def. And if I—let's say I were to win the appeal, what would I win? What point?

Judge. Well, sir, you talk two different kinds of appeal. The Court cannot see how you will win an appeal of this Decision based on the law but if you were to win an appeal, the Board would send the case back for further action. That Decision would have no effect on your conviction in the State Courts. You're [sic] only remedy in terms of that is to try to get your case reopened and overturned by an appellate Court or reconsidered by the Court which found you guilty. Do you understand the difference?

Def. Yes. Well, I don't have any money to do that. Because I have five kids.

Judge. All right. Sir, we will give you the appropriate forms in the event that you file an appeal of this Decision including the form that will allow you to waive the normal filing fees since you are incarcerated. Good luck to you.

Def. Thank you.

*Transcript*, July 18, pp. 14–16. Cifuentes filed an appeal of the administrative order but later withdrew it. On September 28, 1994, defendant was deported to Colombia.

On December 14, 1994 Cifuentes was found at the Luis Muñoz Marin International Airport at a pre-flight inspection area trying to board a plane bound to the city of Tampa, Florida. Further investigation revealed that he had not requested the express consent of the Attorney General to enter the United States, as required by the Immigration and Nationality Act. On January 4, 1995 defendant was indicted with one count of unlawfully entering the United States after having been deported subsequent to a conviction pursuant to 8 U.S.C. § 1326(b)(2).

On March 2, 1995 Cifuentes filed the motion to dismiss before the Court. He collaterally challenges the prior deportation proceedings based on *United States v. Mendoza–López*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

In *Mendoza–López*, a group of Mexican citizens were arrested and deported after a group hearing. At the hearing, they allegedly waived their rights to request a suspension and their rights to appeal. Thereafter, they were arrested and indicted on charges of violating § 1326. Defendants challenged the validity of the prior deportation proceedings and the District Court dismissed the indictment. The Court of Appeals for the Eight Circuit affirmed and the Supreme Court granted certiorari.

■ A violation of § 1326(b)(2) requires that a prior deportation be established conclusively. The Supreme Court held in *Mendoza–López* that to comport with due process the statute must not allow proof of prior deportation proceedings violative of the alien's rights. *Id.,* at 837–38, 107 S.Ct. at 2155. It held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." (Emphasis on original.) *Id.*

The Court established that, at the least, "where the defects in the administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* Since the immigration judge permitted waivers of the right to appeal that were not the result of considered judgments and failed to advise defendants properly of their eligibility to apply for a suspension of deportation, the Court held that the *Mendoza–López* defendants were deprived of judicial review of their deportation proceeding and the government could not rely on the administrative determinations as reliable proof of an element of a criminal offense. *Id.,* at 840–41, 107 S.Ct. at 2156.

The First Circuit has confronted collateral challenges to prior deportation hearings on more than one occasion after *Mendoza–López* was decided. In *United States v. Vieira–Candelario,* 6 F.3d 12 (1st Cir.1993), our Circuit held that, although the immigration judge committed error of law in holding that defendant was ineligible for discretionary relief under 8 U.S.C. § 1182(c), it was not the type of error that would permit a collateral attack of the deportation order. *Id.,* at 15. "To provide such a basis, the error must have violated the alien's due process rights, being 'so fundamental' that it 'effectively eliminates the right of the alien to obtain judicial review.'" *Id.* The Court reasoned that the immigration judge's putative mistake did not rob Vieira of his chance to seek judicial review of the administrative order since he filed an appeal, although he later deliberately withdrew it, abandoning his right. *Id.*

In *United States v. Smith,* 14 F.3d 662 (1st Cir.1994), defendant moved to dismiss the indictment arguing that his rights were infringed on a prior deportation hearing and that the administrative determination could not be relied upon. Smith claimed that the immigration judge erred by compelling him to go forward unrepresented or by not explicitly asking him whether he wanted representation at the deportation hearing. *Id.* at 664. The judge, however, did explain the appeal process to Smith who exercised his

right, albeit on other grounds. *Id.* at 665. The process ended because Smith withdrew his appeal. *Id.*

The First Circuit determined that although the case was different from *Vieira–Candelario,* the differences did not alter the fact that Smith had been afforded the opportunity to appeal the immigration judge's decision. *Id.* That fact led the Court to conclude that Smith had understood his appellate rights. *Id.* Furthermore, although Smith could have appealed on the ground that he had been deprived of counsel, he did not do so. *Id.* He chose other grounds but then withdrew his appeal. *Id.* Since nothing that happened in the deportation hearing affected Smith's ability to appeal, the Court did not permit the collateral attack. *Id.*

More recently, our Circuit faced another collateral challenge in the homonymous but unrelated *United States v. Smith,* 36 F.3d 128 (1st Cir.1994). In the more recent *Smith,* defendant also withdrew his appeal of the administrative decision ordering his deportation. *Id.,* at 130. However, he tried to distinguish his case from *Vieira–Candelario* and the prior *Smith* alleging that he was coerced into waiving his appeal rights. *Id.,* at 131. The Court assumed that there are some circumstances in which a coerced and involuntary waiver of an appeal constitutes a denial of the opportunity for meaningful judicial review. *Id.* However, it found that the record nor any other evidence supported Smith's allegations of coercion. *Id.*

Cifuentes contends in this case that his prior deportation may not be used against him since alleged errors committed by the immigration judge deprived him of an opportunity to obtain judicial review. Defendant asserts that certain facts should have persuaded the judge to postpone the hearing in order for him to obtain counsel: (1) his repeated questions should have made it clear that he did not understand what was going on; and (2) the fact that he was married to a U.S. citizen and had lived in the U.S. for more than 7 years could have warranted some sort of relief had he been able to present such a petition.

■ We must first note that the judge postponed the June 7 hearing specifically to

permit Cifuentes to obtain counsel. The judge gave him more than a month to secure legal assistance and provided him a list of organizations that might represent him for free. Notwithstanding the judge's recommendations, Cifuentes appeared before him on July 18 unrepresented. Considering defendant's inaction and that the Sixth Amendment right to counsel does not apply to deportation proceedings, as the penalties are civil rather than criminal, *see Lozada v. I.N.S.*, 857 F.2d 10, 13 (1st Cir.1988); *Motta v. District Director, I.N.S.*, 869 F.Supp. 80, 90 (D.Mass.1994), the immigration judge's decision to proceed with the July 18 hearing was not unreasonable.[1]

■ As to the issues raised by defendant, we find that Cifuentes' questions during the hearings evidence his understanding of the deportation proceeding. After asking the immigration judge what he should do during the July 7, 1994 hearing, the judge responded that he should seek legal assistance, although it was possible that, given his circumstances, no relief be available. *Transcript,* June 7, p. 5. Cifuentes then said: "Okay, well, if I understand that there's nothing that can be done, but I do have my children. If I'm ordered Deported, what's going to happen to my family?" *Id.* Defendant's comment makes it obvious that he understood both the purpose of the hearing and the judge's admonition that he might not have relief available.

Defendant was asked at the July 18 hearing what would be his country of choice if he were deported. *Id.,* July 18, p. 12. Cifuentes replied "Columbia [sic]." *Id.* Again, this means that defendant knew what would be the end result of the hearing.

Later on, when he tried to plead his state convictions to the judge, the latter explained to him the difference[2] between the state court proceedings and the deportation proceeding and the appeals process. *Id.,* pp.

14–16. Cifuentes then asked "And if I—let's say I were to win the appeal, what would I win? What point?" *Id.,* p. 15. Opposite to what defendant contends, we believe this question shows that Cifuentes understood that there were two distinct proceedings related to him and that an appeal of the administrative decision would not necessarily be a cure-all. That Cifuentes subsequently filed an appeal proves that he also understood his appellate rights.

Finally, after having explained that an appeal of his decision would have no effect on the state convictions and that defendant's only remedy would be an appeal of state proceedings, the judge asked Cifuentes if he understood the difference. *Id.,* p. 16. He answered "Yes. Well, I don't have any money to do that. Because I have five kids." *Id.*

■ If Cifuentes had or did not have some sort of relief available, had he been represented and had his attorney filed the appropriate motion, is an issue we do not need to resolve. If the immigration judge erred in warning Cifuentes that he might not have any relief available is beside the point. As demonstrated in *Vieira–Candelario,* not all errors of law committed in the deportation hearing will warrant a collateral attack of the administrative decision. *Vieira–Candelario,* 6 F.3d at 15. Only those errors that effectively eliminate the right of the alien to obtain judicial review provide a basis to collaterally attack the deportation order. *Id.*

In sum, we do not find any evidence of conduct by the immigration judge that could have foreclosed defendant's right to judicial review of the deportation proceeding. The truth is that Cifuentes did not obtain judicial review of the administrative decision because he abandoned his right when he withdrew his appeal. Given these circumstances, collateral attack of the deportation order is barred.

1. Notwithstanding the absence of the right to counsel, an alien subject to a deportation proceeding must still be afforded due process. *Lozada,* 857 F.2d at 13.

2. According to Cifuentes, the judge did not explain the difference between the state proceeding and the deportation proceeding: "The Immigra-

tion Judge left it at that, when it is [sic] obvious that the defendant did not understand the difference between one proceeding or the other, and the Immigration Judge did not explain it to him." *Motion to Dismiss,* p. 4. This allegation flies in the face of the record, excerpted *infra,* and is, simply, not true.

Accordingly, defendant's Motion to Dismiss (**docket entry** 12) is DENIED.

Jury trial will be set by a separate order.

So ordered.