**UNITED STATES of America, Appellee,**

v.

**José MARTINEZ-AMAYA, also known as Fidel Agrida and Fidel Agrida Ramirez, Appellant.**

**No. 95-1730.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Oct. 10, 1995.

Robert Russell Nigh, argued, Lincoln, Nebraska (David R. Stickman as Federal Public Defender for the District of Nebraska, on the brief), for appellant.

Danial Alan Morris, argued, Omaha, Nebraska (Thomas J. Monaghan as United States Attorney for the District of Nebraska, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

José Martinez–Amaya appeals from a final judgment entered in the United States District Court[1] for the District of Nebraska, after he pleaded guilty to one count of unlawful re-entry into the United States following deportation, in violation of 8 U.S.C. § 1326(b). The district court sentenced Martinez–Amaya under the federal sentencing guidelines to 70 months imprisonment, two years supervised release and a special assessment of $50.00. For reversal, Martinez–Amaya argues the district court erred in failing to require the government to prove beyond a reasonable doubt that his prior deportation proceeding was conducted according to law. For the reasons discussed below, we affirm the judgment of the district court.

### I.

In 1986, Martinez–Amaya, a citizen of Mexico, entered the United States near San Ysidro, California, without being inspected by a United States Immigration and Naturalization Service (INS) officer at that entry. On May 23, 1991, Martinez–Amaya was convicted in the Circuit Court of Multnomah County, Oregon, for delivery of cocaine. After a hearing before an Immigration Law Judge (ILJ), Martinez–Amaya was deported

---

1. The Honorable Lyle Strom, United States District Judge for the District of Nebraska.

to Mexico on June 6, 1991, pursuant to a deportation order entered by the ILJ. Martinez–Amaya later re-entered the United States without inspection, and a one-count indictment was filed in the District of Nebraska on May 14, 1994, charging him with unlawful re-entry following deportation, in violation of 8 U.S.C. § 1326(b).

On July 28, 1994, Martinez–Amaya moved to dismiss the indictment, maintaining that the deportation proceeding underlying his deportation was fundamentally unfair and deprived him of due process. Specifically, he alleged that, while he was held in jail in June 1991 awaiting the deportation proceeding, he was never given a copy of the Immigration Order to Show Cause[2] or a list of attorneys, and that he did not know he had a right to an attorney to assist him in the deportation proceeding. Therefore, Martinez–Amaya sought to collaterally attack the original deportation order, arguing that it could not properly serve as the basis for his indictment under 8 U.S.C. § 1326.

On September 7, 1994, a United States magistrate judge[3] held an evidentiary hearing on Martinez–Amaya's motion to dismiss the indictment. A transcript of the 1991 deportation proceeding was introduced at that hearing. In addition, INS Special Agent Anthony James Cooley, who was stationed in Oregon at the time of Martinez–Amaya's deportation proceedings, testified that his duties included serving orders to show cause and interviewing aliens detained in county jails. Special Agent Cooley testified that it was his practice at that time to read the entire Order to Show Cause to the alien in Spanish if that were the person's native language. The special agent further testified that, although he did not specifically recall serving the Order to Show Cause upon Martinez–Amaya, his signature of service on the form given to Martinez–Amaya indicated to him that he had personally delivered the Order to Show Cause to Martinez–Amaya, together with a list of attorneys in the State

of Oregon who would represent aliens for free or for a nominal fee. He stated that the INS had no policy of requiring that an Order to Show Cause be signed or fingerprinted by the person receiving it.

Martinez–Amaya also testified at the evidentiary hearing. He denied ever receiving a copy of the Order to Show Cause or a list of attorneys, and he stated that he was held in jail two weeks before he saw the ILJ and that while in jail he was not informed of his right to an attorney to assist him in the deportation proceedings.

On October 5, 1994, the magistrate judge issued a report recommending that Martinez–Amaya's motion to dismiss be denied. *United States v. Martinez–Amaya*, No. 95–1730 (D.Neb. Oct. 5, 1994) (Report and Recommendation). The magistrate judge found the testimony of Special Agent Cooley more credible than that of Martinez–Amaya, and she concluded that Martinez–Amaya's 1991 deportation hearing was not fundamentally unfair and that it comported with the requisites of due process. *Id.* at 15. The district court adopted the magistrate judge's report and recommendation on December 1, 1994. *United States v. Martinez–Amaya*, No. 95–1730 (D.Neb. Dec. 1, 1994). Martinez–Amaya entered a conditional plea of guilty to the single-count indictment on December 15, 1994, but he reserved the right to appeal from the denial of the motion to dismiss the indictment. Martinez–Amaya filed this timely appeal after being sentenced by the district court.

## II.

On appeal, Martinez–Amaya argues the district court erred in failing to require the government to prove beyond a reasonable doubt that the 1991 deportation proceeding was conducted according to law. Contending that the district court committed no error, the government responds that the law in this circuit places the burden of proof on a

**2.** Martinez–Amaya argued in the alternative that, even if he were provided with an Order to Show Cause, this notice was inadequate because it was neither in his native Spanish language nor interpreted for him by a certified or expert interpreter.

**3.** The Honorable Kathleen Jaudzemis, United States Magistrate Judge for the District of Nebraska.

defendant who seeks to collaterally attack a prior deportation proceeding to prove both (1) a due process defect in the prior deportation proceeding, and (2) actual prejudice.

Due process requires that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense ... be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." *United States v. Mendoza–Lopez*, 481 U.S. 828, 838, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) (*Mendoza–Lopez*). In *Mendoza–Lopez*, the respondents were informed of their right to counsel, yet they were not adequately informed of their rights either to apply for suspension of deportation or to appeal the Immigration Judge's decision. *Id.* These due process violations precluded use of their deportations to support convictions under 8 U.S.C. § 1326 for illegal re-entry following deportation. *Id.*

In the present case, the district court permitted Martinez–Amaya to collaterally attack the original deportation order. In denying Martinez–Amaya's motion to dismiss the indictment, the district court adopted the magistrate judge's findings that Martinez–Amaya received adequate notice of the deportation charges and was advised of his rights to employ counsel, present evidence, cross-examine witnesses, and appeal the decision of the ILJ. The district court's conclusion that the deportation hearing did not violate Martinez–Amaya's constitutional rights is amply supported by the record. The INS special agent charged with providing Martinez–Amaya with the Order to Show Cause testified unequivocally that his signature on the order indicated to him that he had in fact delivered both the Order to Show Cause and a list of attorneys to Martinez–Amaya. The magistrate judge specifically found the testimony of the special agent more credible than that of Martinez–Amaya. We give weight to the magistrate judge's

credibility determination, and we find no error in the district court's decision that the prior deportation proceeding was conducted according to law.

Martinez–Amaya urges us to adopt the position that the government bears the burden of proving beyond a reasonable doubt the lawfulness of a prior deportation in prosecutions for illegal re-entry following deportation. We decline to do so. Neither the magistrate judge nor the district court specifically stated which party bore the burden of proof in Martinez–Amaya's collateral attack on his prior deportation. The law in this circuit, however, places the burden of proof on an alien seeking to collaterally attack the prior deportation to prove both (1) a due process defect in the prior deportation proceeding and (2) actual prejudice. *See United States v. Santos–Vanegas*, 878 F.2d 247, 250–51 (8th Cir.1989) (*Santos–Vanegas*); *United States v. Polanco–Gomez*, 841 F.2d 235, 236–37 (8th Cir.1988) (*Polanco–Gomez*).[4] Martinez–Amaya cites *United States v. Mendoza–Lopez*, 781 F.2d 111, 112–13 (8th Cir.1985), *aff'd*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (*Mendoza–Lopez*), for the proposition that "when prosecuting a section 1326 proceeding, the government must prove beyond a reasonable doubt that the defendant illegally entered the United States after being deported according to law." The quoted language, however, addressed only the issue whether a defendant must be permitted to collaterally attack the lawfulness of a prior deportation in a Section 1326 proceeding. Our opinion in *Mendoza–Lopez* does not purport to allocate the burden of proof with respect to the validity of the underlying deportation in a prosecution under 8 U.S.C. § 1326. Moreover, our subsequent decisions in *Santos–Vanegas*, 878 F.2d at 250–51, *Polanco–Gomez*, 841 F.2d at 236–37, and, most recently, *United States v. Perez–Ponce*, 62 F.3d 1120, 1122 (8th Cir.1995), establish that the alien, not the government,

4. *Accord United States v. McCalla*, 38 F.3d 675, 680–81 (3d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1968, 131 L.Ed.2d 857 (1995); *United States v. Smith*, 36 F.3d 128, 131 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 529, 130 L.Ed.2d 433 (1994); *United States v. Espinoza–Farlo*, 34 F.3d 469, 471 (7th Cir.1994); *United States v. Meraz–Valeta*, 26 F.3d 992, 998 (10th Cir.1994); *United States v. Encarnacion–Galvez*, 964 F.2d 402, 406 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 391, 121 L.Ed.2d 299 (1992); *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir.1989).

bears the burden of proof in a collateral attack upon a prior deportation.[5]

Martinez–Amaya has failed to satisfy his burden of proof in his collateral attack on the prior deportation, because he made no attempt to demonstrate actual prejudice from the alleged due process defect. *See Santos–Vanegas,* 878 F.2d at 251 (alien charged with unlawful entry into the United States following deportation satisfied prejudice requirement for making collateral attack on prior deportation order by showing that he might not have been deported under proper standard of review for asylum request); *Polanco–Gomez,* 841 F.2d at 237 (alien's collateral attack on prior deportation failed in the absence of any showing of actual prejudice); *Mendoza–Lopez,* 781 F.2d at 113 (aliens demonstrated prejudice from ILJ's failure to inform them adequately about eligibility for suspension from deportation by showing that result of their deportation hearing would have been materially affected had they received adequate notice). In the present case,

Martinez–Amaya failed to satisfy the prejudice requirement because, even if the challenged deportation proceeding had been fundamentally unfair, his prior conviction in May 1991 for delivery of cocaine, which constitutes an aggravated felony, would have precluded him from obtaining relief from deportation. This conviction made Martinez–Amaya deportable pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii) [6] and 8 U.S.C. § 1251(a)(2)(B)(i).[7] Thus, Martinez–Amaya would have been deported even if his 1991 deportation proceeding had been fundamentally unfair. In the absence of a showing of actual prejudice, his collateral attack on the 1991 deportation must fail.

We hold the district court did not err in failing to require the government to prove beyond a reasonable doubt that Martinez–Amaya's prior deportation proceeding was conducted according to law. The district court properly denied Martinez–Amaya's motion to dismiss the indictment for illegal re-

**5.** Because this conclusion defeats the argument raised by Martinez–Amaya on appeal, we need not decide the standard of proof which an alien must satisfy in such a collateral attack. Yet the application of a "preponderance of the evidence" standard of proof to an alien's collateral attack upon a prior deportation seems appropriate to us, in light of the fact that a deportation proceeding is civil in nature. *See INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984). While 8 U.S.C. § 1326 provides for criminal prosecution for illegal re-entry following deportation, this fact supports our position that the burden on the alien seeking to collaterally attack a prior deportation should not be unduly stringent. Because the government bears the burden of proving beyond a reasonable doubt that the alien illegally re-entered the United States after deportation, it is reasonable to conclude that an alien who wishes to attack an element of the criminal offense—the validity of the prior deportation—should not be required to satisfy a higher standard of proof than a preponderance of the evidence standard. For example, the intermediate standard of "clear and convincing evidence" seems inappropriate in this context, because that level of proof has been applied to protect "particularly important" individual liberties against encroachment by the state or by fraudulent persons in cases where the individual needs additional protection than that afforded by the burden of proof applied in ordinary civil proceedings. *See Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 282–83, 110 S.Ct. 2841, 2853–54, 111 L.Ed.2d 224 (1990) (withdrawal of life-sustaining treatment pursuant to incompe-

tent's wishes); *Santosky v. Kramer,* 455 U.S. 745, 756, 102 S.Ct. 1388, 1396, 71 L.Ed.2d 599 (1982) (proceedings for termination of parental rights); *Addington v. Texas,* 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) (civil commitment proceedings); *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation proceedings). By contrast, the application of the "clear and convincing" standard to the present case, would make it more difficult for Martinez–Amaya to defend against prosecution under 8 U.S.C. § 1326. Although this issue is not necessary to a disposition in the present case, we note that no circuit which places the burden of proof on an alien collaterally attacking a prior deportation has indicated that an elevated standard of proof is appropriate. *See McCalla,* 38 F.3d at 680–81; *Smith,* 36 F.3d at 131; *Espinoza–Farlo,* 34 F.3d at 471; *Meraz–Valeta,* 26 F.3d at 998; *Encarnacion–Galvez,* 964 F.2d at 406; *Holland,* 876 F.2d at 1536.

**6.** 8 U.S.C. § 1251(a)(2)(A)(iii) provides: "Any alien who is convicted of an aggravated felony at any time after entry is deportable."

**7.** 8 U.S.C. § 1251(a)(2)(B)(i) provides: "Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

entry following deportation. Accordingly, we affirm the judgment of the district court.