UNITED STATES of America

v.

**Hipocrate NAVEO–MORCELLO, aka Luis Sanchez.**

**CR Nos. 95–30032–MAP, 31.**

United States District Court, D. Massachusetts.

July 9, 1996.

Joseph P. Minardi, Astor & Minardi, John Ferrara, Springfield, MA, for Hipocrate Naveo–Morcello, Defendant.

Kevin O'Regan, United States Attorney's Office, Springfield, MA, for U.S.

### MEMORANDUM REGARDING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

PONSOR, District Judge.

## I. INTRODUCTION

The Government has charged the defendant, Hipocrate Naveo–Morcello, with unlawful reentry into the United States in violation of 8 U.S.C. § 1326. Before the court is Naveo–Morcello's motion to dismiss the indictment. Having reviewed the facts and the law, the court will deny the motion.

## II. FACTS

The relevant facts are as follows. Beginning in early 1992, federal agents began conducting a series of interviews with Naveo–Morcello in connection with an investigation of alleged drug trafficker Pedro Gonzalez. Defendant purported to provide detailed information about Gonzalez's drug-dealing activities over an approximately ten-year period. In June 1992, in the midst of these interviews, defendant pleaded guilty to Massachusetts narcotics charges and began serving a five to eight-year sentence in state prison. By September 1992, he had stopped cooperating with the Government.

After several failed attempts to investigate Gonzalez by other means, Assistant United States Attorney Kevin O'Regan, the federal prosecutor in charge of the Gonzalez matter, contacted Naveo–Morcello, informing him that he was the target of a federal investigation. Thereafter, the Government attempted unsuccessfully to broker a plea agreement to ensure Naveo–Morcello's cooperation in the Gonzalez case.

In September 1993, the State Parole Board informed Naveo–Morcello that he would be released in December to the United States Immigration and Naturalization Service ("INS") for deportation processing. Anticipating his impending expulsion from the United States, defendant wrote and asked INS to discontinue its deportation investigation. His efforts came to no avail. By mid-December, after learning of the Government's intent not to seek charges against Naveo–Morcello, INS decided to move forward with deportation.

In December 1993, as the Government proceeded with its investigation of Gonzalez, Assistant United States Attorney Kevin O'Regan learned that the state was planning to release Naveo–Morcello for deportation processing. In two letters dated December 16 and December 22, O'Regan asked the state authorities to reconsider their position, explaining that Naveo–Morcello's release could impede the Government's ongoing investigation of Gonzalez. O'Regan further requested that the parole board keep him advised of any change in Naveo–Morcello's parole status.

In early January 1994, a state parole official told Naveo–Morcello that his parole would be delayed. Defendant immediately contacted counsel, who, in turn, contacted the parole board and expressed his concern about the delay. In a letter dated February 1, counsel told the board that defendant's status as a potential witness against Gonzalez before a federal grand jury should not affect the state's parole decision. The next day, in response to counsel's efforts, the board agreed to release defendant to INS after a home study was completed. Three days later, INS forwarded defendant's immigration file to Boston for processing. Despite O'Regan's request that he be kept informed of Naveo–Morcello's parole status, the state parole board never informed him of its decision to release Naveo–Morcello to the INS.

On March 29 and April 11, 1994, Naveo–Morcello testified with immunity before a federal grand jury investigating Gonzalez. On both occasions, he recanted his earlier statements to federal agents and denied any knowledge of illegal activity by Gonzalez. After April 11, O'Regan had no further contact with Naveo–Morcello or his counsel.

On May 11, 1994, Naveo–Morcello was released to an INS detention center in Boston. It is unclear why defendant remained in custody between March 30, when the home study was completed, and May 11, when he was released to INS. There is not a scintilla of evidence, however, to suggest that he was kept in prison during this period for the convenience of federal prosecutors working on the Gonzalez case.

On June 15, 1994, INS conducted a deportation hearing. At that hearing, Naveo–Morcello stated, in unmistakable terms, that he wished to leave this country and to waive his right to judicial review. The transcript of the June 15 hearing leaves no room for doubt on this point. Defendant knowingly, voluntarily and intelligently waived his rights and actively sought deportation. Accordingly, on June 17, 1994, the Government deported Naveo–Morcello to the Dominican Republic.

AUSA O'Regan did not learn of defendant's release from prison and subsequent deportation until late July 1994. Within a short time of his deportation, the Government now alleges, he reentered this country illegally.

## III. *DISCUSSION*

Naveo–Morcello's motion to dismiss rests on two arguments. First, he argues that the Government violated his statutory right to receive a deportation hearing while in state prison, resulting in a *de facto* increase in his sentence. Second, he claims that the Government's deliberate attempts to delay his release from prison prejudiced his rights to a full and fair deportation hearing and judicial review. The court will address both arguments in turn.

Title 8, United States Code, § 1252a(a)(1) provides as follows:

The Attorney General shall provide for the availability of special deportation proceedings at certain Federal, State, and local correctional facilities for aliens convicted of aggravated felonies. . . . Such proceedings shall be conducted in conformity with section 1252 of this title . . . and in a manner which eliminates the need for additional detention at any processing center of [INS] and in a manner which assures expeditious deportation, where warranted, following the end of the alien's incarceration for the underlying sentence.

Section 1252a(a)(3)(A) emphasizes the importance of expedited deportation proceedings for aggravated felons:

Notwithstanding any other provision of law, the Attorney General shall provide for the initiation and, to the extent possible, the completion of deportation proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony.

■ Defendant argues that § 1252a confers an absolute right to expedited proceedings on aliens convicted of aggravated felonies. This reading does not comport with the statute's plain language. Section § 1252a(a)(3)(A) provides that the attorney general shall initiate and, *to the extent possible*, complete an aggravated felon's deportation proceedings before his release from prison. Thus the Government's duty is a qualified one. It cannot provide the basis for a motion to dismiss.

■ Naveo–Morcello next argues that the Government drove him to waive his rights to a full and fair deportation hearing and judicial review. Specifically, he claims that federal prosecutors, acting in cooperation with INS, deliberately kept him in prison pending the grand jury investigation of Pedro Gonzalez. As a result, he claims that he waived his right to a hearing on the merits out of a fear of continued incarceration.

There is simply no credible evidence to suggest that federal authorities, acting alone or in concert with state authorities, inappropriately delayed defendant's release from prison. Though they were certainly aware of the Government's interest in Naveo–Morcello, and though this interest may have affected their decision initially to reconsider his parole, it is clear that the state authorities reconsidered, and eventually *allowed*, defendant's parole on an independent basis. After his release from prison, INS expeditiously processed defendant for deportation. In short, if there was any inexcusable delay in this case, it did not come at the hands of federal authorities.

This interpretation of events, of course, does not explain defendant's change in attitude toward deportation. Upon first learning of his possible deportation, Naveo–Morcello wrote INS and expressed his strong desire to stay in the United States. Later on, defendant changed his position, virtually begging INS to deport him. Naveo–Morcello attributes this conversion to an apprehension of extended incarceration. To this court, however, it appears that defendant's change in heart owed as much to the mounting pressure from federal prosecutors for his testimony against Gonzalez as it did to his unfounded fears that state and federal authorities were conspiring to keep him detained. In any event, whatever the source of Naveo–Morcello's apprehension, no evidence suggests that it was caused by any act of the Government.

Finally, defendant urges this court to review the adequacy of his prior deportation hearing. In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court held that where a defendant's prior deportation constitutes a critical element of his alleged crime, and where meaningful judicial review of that order was denied, then a court must review the prior deportation order. *Id.* at 837–39, 107 S.Ct. at 2154–56.

Naveo–Morcello cannot avail himself of the *Mendoza–Lopez* rule. First, for the reasons explained above, his decision to leave this country did not come at the hands of unconscionable Government behavior. Moreover, he voluntarily and knowingly waived his right to judicial review and thereby foreclosed this avenue of collateral attack. *See, e.g., United States v. Vieira–Candelario*, 6 F.3d 12, 15 (1st Cir.1993) (no due process violation where defendant voluntarily waived right to judicial review of deportation order).

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the indictment is hereby DENIED.