USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1722 UNITED STATES OF AMERICA, Appellee, v. TYRONE SMITH, a/k/a PAUL GLEN, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Selya and Stahl, Circuit Judges. ______________ _____________________ Annemarie Hassett, Federal Defender Office, for appellant. _________________ Robert E. Richardson, Assistant United States Attorney, with ____________________ whom A. John Pappalardo, United States Attorney, was on brief for __________________ appellee. ____________________ January 28, 1994 ____________________ TORRUELLA, Circuit Judge. Defendant-appellant Tyrone ______________ Smith was indicted in the United States District Court for the District of Massachusetts for unlawful reentry into the United States following deportation, in violation of 8 U.S.C. 1326. Smith moved to dismiss the indictment, collaterally attacking the deportation order upon which the indictment was based. The district court denied the motion. Smith then entered into a plea agreement in which he pleaded guilty to the indictment but reserved the right to appeal from the denial of the motion to dismiss the indictment. Smith now appeals this denial, as well as the district court's denial of his motion for a downward departure from the applicable sentencing guideline range. We affirm. I. FACTS I. FACTS A. The Underlying Deportation Smith, a citizen of Jamaica, lived in the United States as a lawful permanent resident. In March of 1989, Smith was convicted for unlawful possession of a firearm and trafficking in cocaine. The Immigration and Naturalization Service ("INS") subsequently commenced deportation proceedings against Smith by issuing an order to show cause. On September 11, 1991, Smith was arrested and served with the order to show cause. On September 20, 1991, Smith appeared before the immigration court and informed the immigration judge that he was represented by Paul Carrigan, a Boston attorney. The immigration judge informed Smith that he should appear with his attorney for -2- 2 a deportation hearing on September 27, 1991. The judge also told Smith that there would be a bond hearing on the same day. Smith contends that he did not know that the deportation hearing would take place on September 27, 1991; rather, he thought there would only be a bond hearing on that date. Smith appeared at the September 27, 1991 hearing. Attorney Carrigan did not appear. Another attorney, Manny Daskal, however, did appear on behalf of Smith, but only with respect to the bond aspects of the hearing. At this hearing, when the immigration judge asked Smith if he had counsel to represent him for the deportation hearing, Smith replied that he did not. The immigration judge then told Smith that he had been given ample time to obtain counsel, and that the judge was going forward with the deportation hearing with Smith representing himself. The deportation hearing then commenced, and the immigration judge explained the procedure that would be followed. After the evidence had been introduced, the immigration judge told Smith that based on the types of offenses of which he had been convicted, a waiver was not available to Smith. The immigration judge then issued an oral order of deportation. The immigration judge then announced that notices of appeal had to be filed by October 7, 1991, and explained the appeal process to Smith. On October 9, 1991, Smith filed an appeal with the Board of Immigration Appeals in which Smith claimed that the immigration judge erred by failing to consider -3- 3 the fact that he had five children living in Boston, and that his wife was mentally ill. Smith did not claim that he had been denied his right to counsel at the deportation hearing. On November 14, 1991, before any action was taken with respect to Smith's appeal, Attorney Carrigan sent a letter to the INS stating, in pertinent part: "I am an attorney for Tyrone Smith. I hereby withdraw any pending appeals he may have regarding the above referenced deportation matter." Smith himself also submitted a handwritten statement withdrawing his appeal. B. The Deportation Smith was deported on November 20, 1991. As part of the deportation process, the INS gave Smith a notice, INS FORM I- 294, which stated that in the event that he wished to return to the United States, he had to obtain permission and that "any deported person who within five years returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1000.00." Smith signed the notice, acknowledging his receipt of the document. INS Form I-294 only set forth the penalties generally applicable to a violation of 8 U.S.C. 1326, but did not state the more severe penalties that applied to aliens, who, like Smith, had been convicted of an aggravated felony. In fact, the penalty Smith would face if he returned to the United States without permission was imprisonment for up to fifteen years. C. The Subsequent Criminal Prosecution -4- 4 Despite the deportation order, Smith returned to the United States, and was subsequently apprehended. On November 12, 1992, the grand jury returned a single count indictment charging Smith with illegally returning to the United States after deportation and having been convicted of an aggravated felony in violation of 8 U.S.C. 1326(a) and (b)(2). On January 19, 1993, Smith moved to dismiss the indictment, maintaining that the deportation proceeding underlying his deportation was fundamentally unfair and that he was functionally deprived of judicial review and due process. On January 21, 1993, the district court held a hearing with respect to Smith's motion to dismiss, and then denied the motion. On February 1, 1993, Smith entered a conditional plea of guilty, and preserved his right to seek review of the denial of his motion to dismiss the indictment. At the sentencing hearing on April 8, 1993, Smith moved for a downward departure from the applicable sentencing range. Smith argued that the government engaged in actions that mitigated his conduct when the INS gave him Form I-294 at the time of his deportation, which incorrectly stated the penalty he would face if he returned to the United States. Smith also submitted an affidavit stating that he relied on Form I-294 when he decided to return to the United States. The district court denied Smith's motion for a downward departure, indicating that it would be antithetical to the policy behind the Sentencing Reform Act, which is to deter people from committing crimes, to -5- 5 grant his motion, given that the facts indicated Smith had knowingly committed a felony. The district court then sentenced Smith to 70 months in prison. -6- 6 II. THE MOTION TO DISMISS THE INDICTMENT II. THE MOTION TO DISMISS THE INDICTMENT Smith claims that he was denied his right to counsel at the September 27, 1991 deportation hearing. Specifically, Smith claims that the immigration judge erred at his deportation hearing either by compelling him to go forward unrepresented or by not explicitly asking him whether he wanted representation at the deportation hearing. Therefore, Smith seeks to attack collaterally the original order of deportation, arguing that it cannot properly serve as the basis for his indictment under 8 U.S.C. 1326.1 To provide a basis to attack a deportation order collaterally in a subsequent criminal prosecution, a defendant must show that any error committed with respect to the ____________________ 1 8 U.S.C. 1326 (Supp. 1993) provides in pertinent part: (a) Subject to subsection (b) of this section, any alien who -- (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both. (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection -- . . . (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both. -7- 7 deportation hearing violated his due process rights, and that this error was "'so fundamental' that it 'effectively [eliminated] the right of the alien to obtain judicial review'". United States v. Vieira-Candelario, 6 F.3d 12, 15 (1st Cir. 1993) _____________ _________________ (quoting United States v. Mendoza-L pez, 481 U.S. 828, 837-39 & _______ _____________ _____________ n.17 (1987)). "'[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some ____ meaningful review of the administrative proceeding.'" Vieira- _______ Candelario, 6 F.3d at 15 (quoting Mendoza-L pez, 481 U.S. at 837- __________ _______ _____________ 38). The First Circuit has recently considered a case analogous to the present situation, and its holding controls our decision here. In Vieira-Candelario, the immigration judge _________________ apparently erred in ruling that the defendant was not eligible for a waiver pursuant to 212(c) of the Immigration and Naturalization Act, 8 U.S.C. 1182(c). 6 F.3d at 15. The immigration judge advised the defendant regarding his right to appeal. Id. at 13. The day after the hearing, the defendant __ did, in fact, file a notice of appeal in which he challenged the immigration judge's ruling. Id. The issue was never reached, __ however, because the defendant withdrew his appeal and was deported shortly after doing so. Id. INS agents subsequently __ found Vieira in Providence, Rhode Island, and charged him with violating 8 U.S.C. 1326. Id. Vieira moved to quash the __ indictment and to dismiss the indictment by collaterally -8- 8 attacking the deportation order, arguing that it could not properly serve as the basis for his indictment under 8 U.S.C. 1326. Id. In rejecting the defendant's collateral attack on the __ deportation order, this Court observed: Here, in contrast to the situation in Mendoza-L pez, the immigration judge's _____________ putatively erroneous decision did not "effectively" rob Vieira of his right to review. Vieira filed a notice of appeal. He later deliberately withdrew the appeal. He was represented by counsel throughout. As Vieira voluntarily abandoned his right to obtain review of the deportation order, we see no way to hold that he was deprived of meaningful review of the administrative proceeding contrary to the due process clause. Id. at 15. __ Smith claims that the immigration judge erred at the deportation hearing by denying him his right to counsel. At the conclusion of the deportation hearing, however, the immigration judge explained the appeal process to Smith, which required that a notice of appeal be filed with the Board of Immigration Appeals. Smith then availed himself of his right to appeal, albeit not on the ground that he was deprived of his right to counsel. The appeal process then ended only because Smith, and his attorney, Mr. Carrigan, sent letters to the INS deliberately withdrawing the appeal. While this case does differ from Vieira-Candelario in _________________ that Smith claims that he was deprived of his right to counsel at the deportation hearing, this difference does not alter the fact that Smith was afforded the opportunity to appeal from the -9- 9 immigration judge's decision. The fact that Smith filed an appeal demonstrates that he understood his appellate rights. Moreover, Smith consulted with his attorney regarding the appeal process, as evidenced by the fact that Attorney Carrigan, as well as Smith, sent a letter to the INS withdrawing the appeal which Smith did file. Additionally, while Smith did not appeal on the ground that he had been deprived of counsel, he could have done so. Because nothing that happened in Smith's deportation proceeding affected his ability to appeal, his collateral attack on the deportation hearing must fail. III. SENTENCING III. SENTENCING Smith challenges the district court's refusal to grant him a downward departure from the sentencing range set forth in the Sentencing Guidelines. Smith argues that by virtue of the form the INS gave him at the time of his deportation, INS Form I- 294, the government erroneously informed him of the consequences of returning unlawfully to the country. The INS told Smith that the maximum penalty he would face was two years imprisonment, instead of the correct penalty of 15 years. Smith submitted an affidavit stating that he relied upon this form when he decided to return to the United States, and that had he known of the higher penalty he would face, he would not have returned to the United States. Therefore, Smith contends that this constituted a mitigating circumstance that the Sentencing Commission had not taken into account when it formulated the guidelines, and it warranted a downward departure. Smith argues that the district -10- 10 court improperly denied his motion by concluding that it lacked the legal authority to consider the INS notice as a basis for departure under the Sentencing Guidelines. The government argues that the district court understood that it had the power to consider whether the INS notice provided a ground for departure from the Sentencing Guidelines. But, the government contends, the district court simply refused to exercise its discretion to depart downward. Ordinarily, a district court's refusal to exercise its discretion and depart downward from the sentencing guidelines is not appealable. United States v. Lombardi, 5 F.3d 568, 571 (1st _____________ ________ Cir. 1993); United States v. Rushby, 936 F.2d 41, 42 (1st Cir. ______________ ______ 1991). Appellate jurisdiction may attach, however, where the district court's decision not to depart is based on the court's view that it lacks the legal authority to consider a departure. United States v. Romolo, 937 F.2d 20, 22-23 (1st Cir. 1991). The _____________ ______ record can be fairly read to support the conclusion that the district court believed that it lacked the legal authority to depart under the Guidelines on the basis of the INS notice.2 Thus, we review the district court's decision to determine whether or not, it did, in fact, possess the power to depart downward based on this circumstance. Plenary review is appropriate where the question is ____________________ 2 If we were to conclude that the district court understood that it had the power to depart downward, but chose not to do so, we would not have jurisdiction to consider Smith's appeal, and the district court's sentence would stand. -11- 11 "whether or not the allegedly special circumstances (i.e., the reasons for departure) are of the 'kind' that the Guidelines, in __ principle, permit the sentencing court to consider at all." _________ United States v. Rivera, 994 F.2d 942, 951 (1st Cir. 1993). _____________ ______ Under the Sentencing Reform Act, a court may depart downward if it finds that there was a mitigating circumstance "of a kind" which the Sentencing Commission did not "adequately take[] into consideration . . . in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. 3553(b); U.S.S.G. 5K2.0, p.s.; Rivera, 994 F.2d at ______ 946-47. If the court finds that the sentencing commission did not adequately take a circumstance into consideration, it must then determine if the circumstance is of a kind which should justify a departure. To make this determination, a court should look to the sentencing system's purposes and the guidelines themselves. See Rivera, 994 F.2d at 947, 949. 18 U.S.C. 3553 ___ ______ specifies the purposes which the sentencing system is attempting to achieve, and provides that in determining the particular sentence to be imposed, a court should consider, among other factors, the need for the sentence imposed "to promote respect for the law," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. 3553(a)(2)(A) & (B). We do not believe that when the Sentencing Commission formulated its guidelines, it considered an unusual situation like the present one. Despite this lack of prior consideration, however, this situation does not present the kind of circumstance -12- 12 a sentencing court should consider to support a downward departure. Smith contends that because he relied on an INS notice that misstated the criminal penalty he would face if he illegally returned to the United States, he should be granted a downward departure. Smith's contention runs counter to a primary purpose of the sentencing system, which is to deter criminal conduct. The Sentencing Guidelines were established, in part, to create penalties which were high enough to discourage people from committing a particular crime. Smith implicitly admits that he intentionally committed a felony. The sentencing court cannot countenance Smith's purposeful decision to engage in felonious conduct, and grant him the benefit of a downward departure, because Smith understood the penalty he would face to be relatively minor. Rather, the sentencing court was required to sentence Smith within the applicable sentencing range, so that Smith and others would be deterred from illegally reentering the country in the future. Therefore, the district court's finding that this was not the kind of circumstance that should justify a downward departure was proper, and its decision is affirmed. Affirmed. ________ -13- 13