United States Court of Appeals,

Eleventh Circuit.

No. 94-5012.

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Gustavo Augusto GOMEZ-VILLA, Defendant-Appellant.

July 31, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-6096-CR-KLR), Kenneth L. Ryskamp, Judge.

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

The issue presented in this appeal is whether the district court properly found that it could not depart downward based on sentencing misinformation in a deportation form. We affirm.

I.

A federal grand jury sitting in the Southern District of Florida charged appellant Gustavo Augusto Gomez-Villa ("Gomez-Villa") in a one-count indictment with illegal reentry after deportation following conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Gomez-Villa pled guilty to the charge.

The Presentence Investigation Report ("PSI") calculated Gomez-Villa's base offense level to be 8 under U.S.S.G. § 2L1.2(a). Because Gomez-Villa had been convicted of an aggravated felony, 16 points were added to his offense level. He was given a two-level downward adjustment for acceptance of responsibility and an

additional one-level reduction for doing so timely, decreasing the offense level to 21.  Gomez-Villa's criminal history category was III.

Gomez-Villa first illegally entered the United States in 1986. He was convicted of cocaine trafficking in March 1990 and was deported to Colombia in March of 1991.  He illegally reentered the United States in March of 1992.  His other criminal conduct included a sealed record for trafficking in cocaine in 1986.  With an offense level of 21 and a criminal history category of III, the PSI calculated his guideline range as 46 to 57 months.

Gomez-Villa filed objections to the PSI in which he objected to the guideline range as exceeding the maximum punishment set forth in the immigration form presented to him upon his deportation.  Among his objections, Gomez-Villa conceded that 8 U.S.C. § 1326(b)(2) provides that the maximum penalty for an alien who is deported following conviction for an aggravated felony is 15 years.[1]  Gomez-Villa also objected to his criminal history category III as over-representing the seriousness of his criminal history.

At sentencing, Gomez-Villa argued, and the government stipulated, that he had signed INS Form I-294, which advised that he would be subject to a maximum two-year sentence should he illegally reenter the United States.  Thus, Gomez-Villa argued that the government was barred from seeking a sentence greater than two years, and requested the district court to depart downward under U.S.S.G. § 5K2.0.  Because the government's communication of

_____

[1]Although Gomez-Villa states that the maximum prison sentence is 15 years, 8 U.S.C. § 1326(b)(2) actually provides for imprisonment for not more than 20 years.

erroneous information regarding the penalty for illegal reentry was not a circumstance sufficiently covered by the Sentencing Commission ("the Commission"), the district court concluded that it lacked the authority to depart downward and denied the request. The district court did, however, grant a downward departure of two criminal history categories from III to I because it thought "this is a situation that the authors of the sentencing guidelines did not have in mind." (R3-19). With a total offense level of 21 and a criminal history category of I, the guideline range was reduced to 37 to 46 months. The government objected to the downward departure in the criminal history category but not to the lower end of the guideline range. The district court sentenced Gomez-Villa to 37 months' imprisonment followed by a three-year term of supervised release. The court also ordered that upon release from imprisonment, Gomez-Villa should be deported and not reenter the United States without the permission of the United States Attorney General. Gomez-Villa then perfected this appeal.

## II.

Gomez-Villa contends that the Commission did not consider the mitigating circumstance present in this case—that the government provided Form I-294 erroneously advising aliens that they would be subject to a two-year sentence if they illegally reentered the country—when formulating the guidelines, and that the district court's conclusion that it was without authority to depart on this ground under § 5K2.0 was therefore erroneous. He also claims that the court could have departed under 18 U.S.C. § 3553(a)(1), based on the nature and circumstance of the offense and his history and

characteristics, because he did not purposely engage in criminal conduct, but rather returned to provide financial support for his children.

The government concedes that the ground at issue is a circumstance that was not adequately considered by the Commission, but argues that because none of the goals of the Sentencing Guidelines would be promoted by a downward departure premised on this ground, the district court was, in fact, without discretion to consider a departure.

### III.

Ordinarily, an appellate court may not review a district court's refusal to grant a request for downward departure. *United States v. Hadaway,* 998 F.2d 917, 919 (11th Cir.1993). However, a district court's refusal to consider a departure is reviewable on appeal if the district court's decision is based on the belief that it lacked the authority to consider a departure. *United States v. Williams,* 948 F.2d 706, 708 (11th Cir.1991). The district court's determination that it lacked the authority to depart from the Sentencing Guidelines is reviewed *de novo. Id.*

At sentencing, the district court refused to consider a downward departure based on Form I-294. Thus, because the court refused to depart, believing it lacked the authority to do so, the district court's decision is reviewable.

A district court may make a downward departure from the Sentencing Guidelines if a factor of a kind, or to a degree, not adequately taken into consideration by the Commission when formulating the guidelines exists. 18 U.S.C. § 3553(b); U.S.S.G.

§ 5K2.0. When determining whether the Commission adequately considered a factor, the court can look only to the Sentencing Guidelines, policy statements, and official commentary for guidance. 18 U.S.C. § 3553(b). If the Commission did not adequately consider a particular circumstance, then the court must determine whether reliance on the factor is consistent with the goals of the Sentencing Guidelines. *United States v. Godfrey,* 22 F.3d 1048, 1053 (11th Cir.1994). The goals of sentencing are to reflect the seriousness of the offense, promote respect for the law, provide appropriate punishment, deter criminal conduct, protect the public from the defendant's criminal conduct, and provide the defendant with needed care or treatment. 18 U.S.C. § 3553(a)(2).

                                    IV.

This court has not had an occasion to determine whether the Commission contemplated the situation surrounding the issuance of Form I-294 to deported aliens when formulating the guidelines. *See* U.S.S.G. § 5K2.0. Two of our sister circuits, however, have confronted situations involving requests for a downward departure based on Form I-294. The First and Ninth Circuits both agreed that the Commission did not take into consideration the Form I-294 situation when formulating the guidelines. *United States v. Smith,* 14 F.3d 662, 666 (1st Cir.1994); *United States v. Ullyses-Salazar,* 28 F.3d 932, 938 (9th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995). We agree with the analyses of our sister circuits. Indeed, nothing in the guidelines, policy statements, or commentary suggests that this situation was even

remotely contemplated by the Commission.

Next, we must decide whether a departure based upon Form I-294 is consistent with the goals of the Sentencing Guidelines. *See Godfrey,* 22 F.3d at 1053. Contrary to Gomez-Villa's contentions, a downward departure based on the government's misconduct would not promote respect for the law because it did not encourage or threaten Gomez-Villa into breaking the law by illegally reentering the country. *See Ullyses-Salazar,* 28 F.3d at 938. Gomez-Villa, however, intentionally violated the law by illegally reentering the United States after deportation. Both the First and Ninth Circuits concluded that allowing departures in similar circumstances would be contrary to the Sentencing Guidelines' goals of deterring criminal conduct and promoting respect for the law. *Smith,* 14 F.3d at 666 (concluding that departing after Smith intentionally committed a felony by illegally reentering the United States would be contrary to the goals of the guidelines); *Ullyses-Salazar,* 28 F.3d at 938 (concluding that the only purpose served by a departure would be to deter government misconduct and that the court does not permit departures based on circumstances that neither bear on the offense in question, nor speak to the offender's character). Thus, like our sister circuits, we hold that a departure in this case would be contrary to the guidelines' goal of deterring criminal conduct and promoting respect of the law among those who violate it.

As a second basis for departure, Gomez-Villa suggests that the court could have considered a downward departure based upon the circumstances surrounding the offense and his reasons for illegally

reentering the country, i.e., his family ties and financial responsibilities. At sentencing, Gomez-Villa contended that he reentered the United States only to help support his children while they attended college, that he immediately admitted that he was an illegal alien when found, and that his criminal history was significantly over-represented by a criminal history category III. The law is clear that family ties and responsibilities are not relevant in determining sentence unless there are extraordinary circumstances. U.S.S.G. § 5H1.6; *United States v. Cacho,* 951 F.2d 308, 310-11 (11th Cir.1992) (unless there are extraordinary circumstances, a district court may not depart downward to reflect a defendant's parental situation). Nothing in this case demonstrates that Gomez-Villa's financial responsibilities to his college-age children are extraordinary. Moreover, the district court already granted a departure under § 5K2.0, concluding that the "computations under the guidelines" significantly overstated the seriousness of the offense. (R3-21).

Accordingly, the district court was correct in holding that it lacked the authority to consider a departure.

For the foregoing reasons, we affirm Gomez-Villa's sentence.

AFFIRMED.