**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose Manuel MIRANDA–RAMIREZ, also known as J. Manuel Miranda, also known as Jose Manuel Miranda, also known as Monuel Miranda, Defendant–Appellant.**

**No. 01–4096.**

United States Court of Appeals, Tenth Circuit.

Oct. 31, 2002.

Robert L. Booker, Booker & Associates, P.C., Salt Lake City, UT, for Defendant–Appellant.

Paul M. Warner, United States Attorney, Laurie J. Sartorio, Assistant United States Attorney, Salt Lake City, UT, for Plaintiff–Appellee.

Before SEYMOUR, PORFILIO, and O'BRIEN, Circuit Judges.

O'BRIEN, Circuit Judge.

Defendant-appellant Jose Manuel Miranda–Ramirez challenges the district court's refusal to depart downward when sentencing him for illegally reentering the United States following deportation for an aggravated felony. We affirm.[1]

## I. Background

Mr. Miranda–Ramirez was convicted in 1988 of possession and conspiracy to distribute cocaine and heroin and using a telephone to facilitate a felony. He served approximately three years in prison and was released and ultimately deported to Mexico in 1992. At the time of his deportation, he was given Immigration and Naturalization Service Form I–294 (Form I–294) providing him with the following warning:

> Should you wish to return to the United States you must write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation. By law (Title 8 of United States Code, Section 1326) any deported person who within five years returns without permission is guilty of a felony. If convicted he may be punished by imprisonment

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

of not more than two years and/or a fine of not more than $1,000.00.

Aplt. Br., Attach. F at 1. According to his brief on appeal, Mr. Miranda–Ramirez surmised that this language permitted him to reenter the United States at any time after five years without fear of criminal prosecution[2] and that, in any event, the potential punishment for his illegal reentry was a maximum of two years in prison. In 2000, he was arrested in Utah with approximately forty-eight pounds of marijuana and a stolen handgun in his car.

He admitted returning to the United States without permission and subsequently pled guilty to violating 8 U.S.C. § 1326, prohibiting the reentry of deported aliens without the consent of the Attorney General. Section 1326(b)(2) makes illegal reentry by any alien removed subsequent to a conviction of an aggravated felony punishable by a prison term of up to twenty years. The district court accepted his plea, and sentenced him to forty-six months in prison. Mr. Miranda Ramirez has appealed, and argues that (1) the district court erred in refusing to consider a downward departure based on an entrapment by estoppel mitigating factor; (2) the district court erred in imposing a sentence exceeding the amount of time referenced in Form I–294; and (3) his rights to due process and to be free from *ex post facto* laws may have been violated by misleading language contained on the form. Each of these arguments is based on the district court's refusal to grant his motion for a downward departure from the sentencing range set forth in the sentencing guidelines.

## II. Appellate Jurisdiction

 As a preliminary matter, we must determine whether we have jurisdiction to review the district court's refusal to grant Mr. Miranda–Ramirez a downward departure in this case. While a district court's legal interpretation and application of the sentencing guidelines is reviewed de novo, *see United States v. Henry,* 164 F.3d 1304, 1310 (10th Cir.1999), "our authority to review a district court's departure decision[ ] is limited." *United States v. Hanson,* 264 F.3d 988, 992 (10th Cir.2001). Ordinarily, a district court's refusal to exercise its discretion and depart downward from the sentencing guidelines is not appealable. *See United States v. Talk,* 13 F.3d 369, 371 (10th Cir.1993). "[C]ourts of appeals cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." *United States v. Castillo,* 140 F.3d 874, 887 (10th Cir.1998). "This exception does not apply when a sentencing court concludes under the defendant's particular circumstances that it does not have the authority to depart." *Id.* (emphasis omitted). Ambiguous statements made by district court judges must be treated "as though the judge was aware of his or her legal author-

---

**2.** At his sentencing hearing, Mr. Miranda–Ramirez's counsel made the following statement to the district court:

When he first approached me, [defendant] wanted me—in fact asked me to argue that the fact that he was not found in the United States within that five-year period should be a defense, and we actually went around and around in circles on a number of occasions, and I explained ultimately convinc-

ingly, I think, ... that not being found in the country is no excuse. Plus there was some indication that he hadn't waited the five years, in any event. He was back in the country within those five years.

R., Vol. II at 7. That argument has been waived. *See O'Connor v. City & County of Denver,* 894 F.2d 1210, 1214 (10th Cir.1990) (holding that this court will not consider claims abandoned in the district court).

ity to depart but chose instead, in an exercise of discretion, not to depart." *United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir.1999). Given an unambiguous statement concerning the court's lack of legal authority or discretion thus making review proper, "we review de novo the district court's interpretation that the Guidelines provide it no power to depart downward from the prescribed sentencing range." *Talk*, 13 F.3d at 371; *see also Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("[W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point.").

■ In its brief on appeal, the government argues that the district court understood it had the discretionary authority to grant Mr. Miranda–Ramirez's motion on the basis of the misleading language in Form I–294, but simply refused to exercise that discretion to depart downward. Thus, the government contends, this court lacks jurisdiction to review the district court's decision. We disagree. In *Castillo*, this court clarified the distinction between a sentencing court's nonreviewable discretionary refusal to depart versus a refusal that may be reviewed on appeal. By way of illustration, the court stated:

> At the sentencing phase of his trial, a defendant argues that the court should depart downward because he has two young children to support and that they have no other relatives to care for them. The sentencing court considers the defendant's circumstances, but ultimately determines that they are not unusual enough to justify a departure. Accordingly, the court states that it has no authority to depart downward. The court's determination is discretionary, and we would have no jurisdiction to review the court's refusal to depart. If,

> however, the sentencing court does not consider the defendant's circumstances, *but rather* states that family circumstances, as a matter of law, are never a basis for downward departure, we would have jurisdiction to review the court's legal conclusion.

*Castillo*, 140 F.3d at 887 (emphasis in original).

In its response to Mr. Miranda–Ramirez's motion for a downward departure in the present case, the government made two arguments: first, that such a departure was legally unwarranted; and second, that the case was not atypical or outside the "heartland" of typical cases governed by the particular guideline. At the sentencing hearing, defense counsel argued at length that Mr. Miranda–Ramirez's particular circumstances, including his interpretation of the form's language, sufficiently removed his case from the heartland of guideline cases, thus warranting a downward departure. The government responded that Mr. Miranda–Ramirez's theory of reliance on the misleading INS form, a legal theory primarily based on his ignorance of the actual maximum punishment found in 8 U.S.C. § 1326 for illegal reentry, was "really not a grounds for a downward departure." R., Vol. II at 13. Against this background, the court and defense counsel engaged in the following colloquy:

> [Def. Counsel]: I am convinced that this Court does have discretion, and the only way that there would be an issue for appeal is the question of whether or not the Court has discretion.
>
> The Court: That's right.
>
> [Def. Counsel]: And—
>
> The Court: That's right because I don't think I do. And you have argued. I wish I did, but I don't think I do. I've looked at this very carefully, and I don't see how this is outside the heartland in

any way. I'd love you to prove me wrong on a case like this. I would have no problem being demonstrated to be wrong. You think I have discretion, and I don't believe I do.

*Id.* at 15–16.[3]

After careful review, we conclude that these statements demonstrate that the district court believed it lacked the legal authority to depart under the guidelines based on Mr. Miranda–Ramirez's reliance on the language in Form I–294. Our conclusion is bolstered by the court's statement at the hearing that reliance upon the misleading language "sounds like a great appellate issue," *id.* at 14, an issue capable of review only if the district court made the legal conclusion that it lacked the legal authority to depart. Moreover, arguments antecedent to the court's oral ruling were fundamentally legal ones, addressing the propriety of incorporating the relevant mitigating circumstance into the guideline's heartland of typical cases. Thus, the record reveals that the district court's conclusion that the present case is not outside that heartland is a reviewable legal determination concerning the scope of the heartland for the guideline governing unlawfully entering or remaining in the United States. *See United States v. Collins,* 122 F.3d 1297, 1303 n. 4 (10th Cir. 1997) (noting that, unlike a court's decision whether or not to depart based primarily on the court's judgment about the facts of the case, its conclusion as to what constitutes a guideline's heartland is an essentially legal question). Thus, we have jurisdiction to review the district court's decision that it lacked the authority to depart downward from the prescribed sentencing range.

3. We admonish both defense and government counsel for violating 10th Cir. R. 28.2(A)(2) and 28.2(B) by failing to attach to their briefs

### III. Downward Departure

"As a general rule, a sentencing court may depart from the applicable Sentencing Guidelines if it finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' " *Hanson,* 264 F.3d at 993 (quoting 18 U.S.C. § 3553(b)). "In order to determine whether a particular circumstance was adequately taken into account by the Sentencing Commission, the court must 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.' " *Id.* (quoting *Koon,* 518 U.S. at 92–93, 116 S.Ct. 2035 (further quotation omitted)). If the Commission has not adequately considered a particular circumstance, "the court must determine whether reliance on the factor is consistent with the goals of the Sentencing Guidelines." *United States v. Gomez–Villa,* 59 F.3d 1199, 1202 (11th Cir.1995). Those goals include the need to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the crime; (2) deter criminal conduct; (3) protect the public from the defendant's further crimes; and (4) provide the defendant with needed correctional care or treatment. 18 U.S.C. § 3553(a)(2).

Other circuits addressing the issue have concluded that the Commission did not take into consideration the situation surrounding the issuance of Form I–294 to deported aliens when formulating the guidelines. *See, e.g., Gomez–Villa,* 59 F.3d at 1202; *United States v. Ullyses–Salazar,* 28 F.3d 932, 938 (9th Cir.1994), *overruled on other grounds by United States v. Gomez–Rodriguez,* 96 F.3d 1262, 1265 (9th

a copy of the oral transcript of the district court's ruling.

Cir.1996); *United States v. Smith,* 14 F.3d 662, 666 (1st Cir.1994). We agree with the conclusions of our sister circuits, and specifically with the court's statement in *Gomez–Villa* that "nothing in the guidelines, policy statements, or commentary suggests that this situation was even remotely contemplated by the Commission." *Gomez–Villa,* 59 F.3d at 1202.

Likewise, those circuits considering this issue have concluded that a departure based upon Form I–294 is inconsistent with the goals of the sentencing guidelines. *See, e.g., Gomez–Villa,* 59 F.3d at 1202–03. As the Second Circuit observed,

> even if the Sentencing Commission never considered that the INS might distribute outdated Form I–294s, "[t]he sentencing court cannot countenance [the defendant's] purposeful decision to engage in felonious conduct and grant him the benefit of a downward departure because [the defendant] understood the penalty he would face to be relatively minor."

*United States v. Cruz–Flores,* 56 F.3d 461, 464 (2d Cir.1995) (quoting *Smith,* 14 F.3d at 666 (alterations in original)). Again, we agree with our sister circuits that a departure in the present case would be contrary to the guidelines' important purposes of affording adequate deterrence to criminal conduct and promoting respect for the law. Accordingly, the district court's determination that it lacked the authority to downward depart based upon the circumstances surrounding Mr. Miranda–Ramirez's reliance upon Form I 294 was proper.

### IV. Due Process and Entrapment by Estoppel Claims

■ On appeal, Mr. Miranda–Ramirez argues that his sentence violates his right to due process because the recommended term of his imprisonment based on the underlying statute exceeds the incorrect reference to the potential sentence found in Form I–294. Additionally, he argues that the district court should have considered the legal defense of entrapment by estoppel as a mitigating factor warranting downward departure. We disagree.

■ The implication of either argument suggests that criminal statutes are immutable. Regardless of inaccuracies in Form I–294, it was unreasonable for Mr. Miranda–Ramirez to assume that the relevant statutes would not be amended, as they were, between 1992 and 2000. Likewise, it is difficult to imagine what error correcting process ought to be due to Mr. Miranda–Ramirez as a substitute for self help. Had he heeded the form's command to contact the Consular Office for instructions about reentry, the error, and his claimed reliance upon it, could have easily been corrected. Finally, we note that estoppel principles are not intended to simply reward irrational expectations.

Moreover, this court has addressed the same arguments based on the misleading language in Form I–294 in the context of a motion to dismiss an indictment. *See United States v. Meraz–Valeta,* 26 F.3d 992 (10th Cir.1994). In that case, we concluded that the discrepancy between the INS form and the statutory maximum term of imprisonment did not violate due process. *Id.* at 996. This conclusion is in accord with other circuits that have addressed these arguments at sentencing. *See, e.g., Cruz–Flores,* 56 F.3d at 463–64 ("[R]eceipt of the erroneous Form I–294 does not transform a statutorily authorized sentence into a due process violation."); *United States v. McCalla,* 38 F.3d 675, 679 (3d Cir.1994) (holding that to satisfy due process, it is the underlying criminal statute, rather than the INS form, that must clearly set forth the conduct which constitutes a crime and the authorized punishment).

Likewise, in rejecting an argument based on the defense of entrapment by estoppel[4] we stated,

> Defendant was not misled as to the legality of his conduct. If he was misled at all, it was only as to the specific penalties resulting from illegal entry into the United States. Because INS officials properly informed Defendant that any subsequent reentry without permission of the Attorney General would constitute a felony, the entrapment by estoppel defense is inapplicable to the facts of this case.

*Meraz–Valeta,* 26 F.3d at 996; *see also United States v. Thomas,* 70 F.3d 575, 576 (11th Cir.1995) ("We agree with our sister circuits and hold that equitable estoppel is not a basis for challenging a sentence imposed in excess of the two-year maximum erroneously stated on INS Form I–294.").

## V. Ex Post Facto Claim

■ Related to his claim of a violation of due process, Mr. Miranda–Ramirez argues that his sentence violates the *Ex Post Facto* Clause of the United States Constitution.[5] Specifically, he argues that because the INS form advised him that a violation of 8 U.S.C. § 1326 carried a potential two-year term of imprisonment, his actual sentence of forty-six months represented an unfair increase in punishment.

■ The Constitution's *ex post facto* clause bars only retrospective applica-

tion of laws that materially disadvantage a defendant. Section 1326(b)(2) was amended in 1994 to increase the maximum penalty to twenty years for illegal reentry of an alien removed subsequent to a conviction for commission of an aggravated felony. This was the law in effect at the time of Mr. Miranda–Ramirez's arrest in 2000. Therefore, application of § 1326(b)(2) to his conduct was not retrospective and thus did not violate the *ex post facto* clause. *See McCalla,* 38 F.3d at 680 (holding that a conviction under § 1326(b) subsequent to the statutory amendment enhancing the punishment was not an *ex post facto* violation). We also reject his argument that his subjective belief in Form I–294's warning of a maximum two-year term of imprisonment implicated his constitutional rights. As the Seventh Circuit observed,

> [u]nder the ex post facto clause Congress may not increase the penalty after the acts constituting the offense; in that sense one may "rely" on the maximum penalty when deciding whether to commit an offense. But the ex post facto clause does not depend on what the actor knew; it operates even if the actor wrongly believed that the penalty was much greater than the statute actually provided. So, too, a belief that the penalty is smaller than the statute actually provides does not set a cap on the sanction.

---

4. "The defense of entrapment by estoppel is implicated where a government official misleads a party as to the legality of certain conduct and the party proceeds to act on the misrepresentation so that criminal prosecution of the party implicates due process concerns under the Fifth and Fourteenth Amendments." *Meraz–Valeta,* 26 F.3d at 996.

5. Article I of the United States Constitution provides that "no ... ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. "[T]o fall within the *ex post facto* prohibition, two critical elements must be present: first,

the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). "[C]entral to the *ex post facto* prohibition is a concern for the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.*(quotation omitted).

*United States v. Shaw,* 26 F.3d 700, 701 (7th Cir.1994).

The judgment and sentence of the United States District Court for the District of Utah is AFFIRMED.