F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DALE CHALLONER,

    Defendant-Appellant.

No. 01-1437
(D.C. No. 00-CR-482-N)
(D. Col.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

Defendant Dale Challoner appeals the sentence imposed following his conviction

for a variety of offenses related to an attempted armed bank robbery. We have

jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

In the weeks prior to September 11, 2000, Defendant Challoner and co-defendants

Isaac Ortiz and Sherri Jackson developed a plan to rob the Colorado East Bank & Trust in

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

La Junta, Colorado.  The plan involved several steps, including setting fire to an elementary school to divert and distract law enforcement, and kidnapping the bank president at gunpoint.

On the evening of September 11, Ms. Jackson drove Defendant and Ortiz to the New Columbian Elementary School.  Defendant had previously obtained two "Molotov cocktails."[1]  He exited the vehicle carrying the firebombs, lit the wicks, and threw both through a window of the school.  The firebombs exploded and began to burn inside the school.  Defendant then returned to the vehicle, and Jackson drove across town to the home of Greg Mullins, the president of Colorado East Bank & Trust.  Defendant and Ortiz donned masks and gloves, and exited the vehicle.  Defendant armed himself with a shotgun.  Ortiz carried a knife.  The two men broke into the Mullins' residence and entered the bedroom where Mullins lay asleep with his wife.  Ortiz struck Mullins' wife, bound and gagged her with duct tape, and threatened her with the knife.  Defendant struck Mullins with the shotgun, pointed the weapon at him, and ordered him to dress and accompany Defendant to the bank.  Defendant informed Mullins his wife would be killed if he did not cooperate.

Defendant then forced Mullins to drive him at gunpoint to the bank.  Ortiz

---

[1]  The Government's expert witness described a "Molotov cocktail" as an incendiary device made from a breakable container, usually a glass bottle, filled with a flammable liquid and fitted with a wick.  The device is used by lighting the wick and throwing the container at the target.

remained behind with Mullins' wife. Upon entering the bank, Mullins realized he had left his glasses behind and could not see well enough to open the safe. He supplied the combination to Defendant, who likewise was unable to open the safe. Defendant again struck Mullins with the shotgun. He then forced Mullins to place a phone call to the Mullins residence, and fled the scene. The phone call was a preplanned signal to Ortiz that the robbery was completed. Upon receiving the call, Ortiz also fled leaving Mrs. Mullins bound and gagged.

A grand jury returned a fourteen-count indictment charging Defendant and six others with various offenses arising from the bank robbery plot. The indictment charged Defendant in eight counts, one of which was dismissed prior to trial. Defendant was tried on seven counts: Conspiracy to Commit Bank Robbery (Count 1); Attempted Bank Robbery (Count 2); Using, Carrying and Brandishing a Firearm in Relation to a Crime of Violence (Count 3); Damaging Property by Means of Fire (Count 4); Using and Carrying a Destructive Device in Relation to a Crime of Violence (Count 5); Possession of an Unregistered Incendiary Device (Count 6); and Use of Fire or Carrying an Explosive During Commission of Another Felony (Count 14). The predicate felonies identified in Count 14 were the conspiracy alleged in Count 1 and the attempted armed bank robbery alleged in Count 2. A jury convicted Defendant on all seven counts.

The jury verdict form contained several handwritten notations. Next to the word "guilty" under Count Fourteen, a juror jotted the words "carrying as per cts #1 and #2."

3

The district court judge raised the issue with counsel, and provided the parties an opportunity to object. Defendant declined to object or raise any issues at that time. The district court polled the jury, making reference to the handwritten notes. All jurors affirmed the verdict, expressly confirming that the verdict form accurately represented their individual and collective verdicts. The district court subsequently sentenced Defendant to a term of imprisonment totaling 1,080 months, or 90 years.

## II.

On appeal, Defendant first asserts there was insufficient evidence to support the jury finding that Defendant carried an explosive as charged in Count 14. Count 14 charged Defendant with violating 18 U.S.C. § 844(h), a sentence enhancement statute that imposes a ten-year sentence in addition to any other sentence if the Government proves the defendant "uses fire or an explosive to commit any felony" or "carries an explosive during the commission of any felony." Proof of either prong of the statute will subject a defendant to the mandatory sentence enhancement. Count 14 charged Defendant under both prongs of the statute and referred to both the conspiracy charged in Count 1 and the attempted bank robbery charged in Count 2 as the predicate offenses. The district court properly instructed the jury that, to return a guilty verdict, all jurors must unanimously agree on at least one prong and must unanimously agree on the predicate offense proven with respect to that prong. If a jury is properly instructed on the unanimity requirement, the jury may return a general verdict without specifying which prong or predicate offense

4

was proven.  See United States v. Linn, 31 F.3d 987, 991 (10th Cir. 1994).  But Defendant argues that the jury's handwritten notation, "carrying as per cts #1 and #2," implies the jury found Defendant guilty of carrying an explosive rather than using fire.  Defendant further asserts the evidence was insufficient to find Defendant guilty of carrying an explosive.

We generally treat sufficiency of the evidence claims as legal questions, which we review de novo.  See United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000).  In conducting this de novo review, "we ask only whether taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  Id. (internal quotation marks and citations omitted).  During our review, we will not revisit questions of witness credibility or re-weigh the evidence before the jury.  Id. at 1289-90 ("It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented.").[2]

The Government argues that the jury's notations were non-responsive to the

_____

[2]  Defendant failed to properly preserve his sufficiency of the evidence claim.  In the sufficiency of the evidence context, however, we have explained that a defendant's failure to preserve a claim "is of little moment," because, although plain error language is sometimes used, the standard actually applied is "essentially the same as if there had been a timely motion for acquittal."  United States v. Cox, 929 F.3d 1511, 1514 (10th Cir. 1991) (quoting United States v. Bowie, 892 F.2d 1494, 1497 (10th Cir. 1990) (internal quotation marks and additional citations omitted)).

special verdict included in the verdict form and unnecessary to the jury's determination of guilt. Thus, the Government argues the jury's notations should be disregarded. See United States v. Ailsworth, 138 F.3d 843, 846 (10th Cir. 1998) ("unnecessary or irrelevant statements in a verdict form may be disregarded as surplusage"). The Government also argues the district court resolved any potential ambiguity in the verdict by polling the jury. Because we conclude the evidence was sufficient to support a jury verdict on the carrying prong, we need not determine whether the jury's handwritten notations created an unresolved ambiguity in the verdict.

The record contains ample evidence Defendant "carried an explosive during the commission of a felony" as charged in Count 14. Contrary to Defendant's claim, the term "explosive" does include Molotov cocktails. Title 18 U.S.C. § 844(j) defines an explosive as including "explosive or incendiary devices withing the meaning of paragraph 5 of section 232 of this title." Section 232(5), in turn, defines "explosive" as:

> any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

18 U.S.C. § 232(5). A "Molotov cocktail" such as those used to set fire to the elementary school in this case clearly is included within this definition.

The record contains substantial evidence that Defendant procured the explosive devices, transported them to the Elementary School, carried the devices from the car, lit

6

the wicks, and threw the devices through a window of the school. The record also contains substantial evidence that these acts occurred as part of Defendant's pre-planned attempt to commit an armed bank robbery. Taking the evidence as a whole, and viewing it in the light most favorable to the Government, a reasonable jury unquestionably could find Defendant guilty beyond a reasonable doubt of "carrying an explosive during the commission of a felony."

## III.

Defendant next asserts the district court erred in denying Defendant's motion for a downward departure. Ordinarily, a district court's refusal to exercise its discretion and depart downward from the sentencing guidelines is not appealable. See United States v. Miranda-Ramirez, 309 F.3d 1255, 1258 (10th Cir. 2002). "Courts of appeals cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." Id. (quoting United States v. Castillo, 140 F.3d 874, 887 (10th Cir.1998)). Ambiguous statements made by district court judges must be treated "as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart." Id. (quoting United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir.1999)). Defendant concedes the district court was aware of its general authority to depart, but asserts the court failed to consider the

7

constitutional necessity for a departure in this case.

Having reviewed the sentence hearing transcript, we conclude the district court was well aware of the constitutional requirement that the sentence imposed reflect the nature and circumstances of the offense and the history and characteristics of the defendant. The district court also was aware of its authority to depart downward based on constitutional proportionality. Contrary to Defendant's assertion, the district court expressly considered and rejected Defendant's proportionality argument. The court was struck by Defendant's lack of remorse and refusal to admit responsibility for the harm caused by his actions. As a result, the court imposed a sentence higher than that required by the statutory minimum. Because the district court knew of its legal authority to depart downward from the sentencing guidelines based on proportionality, this Court does not have jurisdiction to review the district court's decision not to depart.

Defendant also asserts the sentence imposed was, in fact, constitutionally disproportionate to the gravity of the offenses. We do have jurisdiction to review Defendant's sentence for constitutional proportionality. See United States v. Youngpeter, 986 F.2d 349, 355 (10th Cir. 1993). The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. See Solem v. Helm, 463 U.S. 277, 284 (1983). Within this limitation, the determination of the proper penalty is a matter for the legislature. If the imposed sentence is within the statutory limits, as was Defendant's, "an appellate court generally will not regard it as

cruel and unusual punishment." <u>Youngpeter</u>, 986 F.2d at 355 (quoting <u>United States v. Hughes</u>, 901 F.2d 830, 832 (10th Cir. 1990) (internal quotation marks omitted)). Defendant committed a series of violent offenses including destruction of property, kidnapping, and attempted armed bank robbery. Defendant's sentence was not constitutionally disproportionate to the severity of his crimes. <u>See</u> <u>Hughes</u>, 901 F.2d at 832.

For the reasons stated above, the district court's sentence is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge