# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1341

_____

United States of America

*Plaintiff - Appellee*

v.

Elmer Joel Espinal

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 17, 2020
Filed: April 15, 2020

_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Elmer Espinal appeals his conviction for illegal reentry into the United States, in violation of 8 U.S.C. § 1326. The district court[1] sentenced him to time served with no supervised release to follow. On appeal, Espinal challenges the denial of his

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

motion to dismiss the indictment on the grounds that it violated the Speedy Trial Act and that it was predicated on an invalid removal order.[2] Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On August 5, 2004, Espinal, a citizen of Honduras, was arrested for assault in Wichita Falls, Texas. After his sentence was discharged, he falsely claimed to immigration authorities that he was a Mexican citizen and was allowed to voluntarily depart to Mexico on October 6, 2004. On October 20, 2004, immigration authorities found Espinal at a ranch in Texas. They later served Espinal with, among other things, a notice to appear (NTA) and released him on his own recognizance. The NTA ordered Espinal to appear before an immigration judge (IJ) at a listed Texas address and at a date and time to be set. Another form provided to Espinal indicated that he did not give a phone or address where he could be contacted. Espinal was also directed to meet with a deportation officer on the third Wednesday of each month, but he failed to do so.

On January 25, 2005, an IJ ordered Espinal removed from the United States to Honduras. The IJ found that Espinal was not present at the hearing, that no reasonable cause was provided for his failure to appear, and that a notice of hearing was not given to Espinal because he failed to notify the court of his address. The IJ held an *in absentia* hearing on removability. Because Espinal was not present, the IJ found that Espinal failed to meet any applicable burden of proof or show eligibility for any relief that would prevent his removal from the United States. On February 9, 2005, a warrant for removal was issued.

---

[2]We note that this case has factual and legal similarities to United States v. Ricardo Macias Saucedo, No. 19-1693. Espinal raises similar arguments to the defendant-appellant in that case.

-2-

Espinal was later arrested in San Marcos, Texas, but it appears that he absconded to Kansas. Espinal was then arrested for assault in Lawrence, Kansas in August 2007. On September 21, 2007, he was removed from the United States pursuant to the February 2005 warrant for removal.

In March 2013, Espinal was arrested and detained in the Washington County, Iowa jail for operating a motor vehicle while intoxicated. After discharging his sentence, Immigration and Customs Enforcement (ICE) agents took him into custody on April 11, 2013. Espinal claimed that he last entered the United States in January 2008. He was served with a notice of intent to reinstate the prior removal order, though Espinal refused to sign it or answer any questions put to him by ICE agents. On May 3, 2013, Espinal was once again removed from the United States.

On May 9, 2018, ICE agents encountered Espinal at the Midwest Precast Concrete facility in Mount Pleasant, Iowa, where agents were executing a search warrant. The agents took him into custody. That same day, agents served on Espinal a notice that they intended to reinstate the 2005 removal order and warrant for removal.

The government filed a criminal complaint in district court charging Espinal with illegal reentry into the United States on June 4, 2018. On that day, Espinal was transferred to the custody of the United States Marshal. On June 20, 2018, a federal grand jury returned an indictment charging Espinal with the same offense. Espinal moved to dismiss the indictment, arguing that his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, were violated and that the underlying removal order was invalid and could not serve as the basis for a conviction under 8 U.S.C. § 1326(a). The district court denied the motion without a hearing. Espinal entered a conditional guilty plea in which he reserved his right to appeal the denial of his motion to dismiss the indictment. He was sentenced to time served with no supervised release to follow.

II.

Espinal appeals the district court's denial of his motion to dismiss the indictment on the grounds that it violated the Speedy Trial Act. He also challenges the district court's decision to deny his motion on this issue without holding a hearing. After carefully reviewing the record and the parties' submissions, we reject his arguments for the same reasons given in our decision today in United States v. Ricardo Macias Saucedo, No. 19-1693.[3] As in that case, we decline to reach the issue of whether there is a "ruse exception" to the Speedy Trial Act because, even assuming that the exception exists, the facts in this case do not show that any such ruse occurred. Further, the district court did not abuse its discretion in declining to hold a hearing on the motion to dismiss the indictment before denying it.

III.

Espinal next appeals from the district court's denial of his motion to dismiss the indictment on the grounds that the underlying removal order was invalid. As with his Speedy Trial Act challenge, he also contends that the district court improperly denied the motion on this issue without holding an evidentiary hearing. We review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Santos-Pulido, 815 F.3d 443, 445 (8th Cir. 2016).

We have explained that in illegal reentry cases, "the defendant may collaterally attack the underlying deportation proceedings and prevent the government from using them as a basis for conviction" if there was an error in those proceedings that made them "fundamentally unfair in violation of due process," and the error "functionally

---

[3]We note that the relevant dates for Speedy Trial Act purposes are the same in both cases.

deprived the alien of the right to judicial review." United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995). Moreover, "[i]n this circuit, the establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice; an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice." Id. (footnote omitted). Further, "[a]ctual prejudice exists where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." Id. (internal quotation marks omitted). It is Espinal's burden to prove that the underlying proceeding was fundamentally unfair and that he was prejudiced as a result. See United States v. Martinez-Amaya, 67 F.3d 678, 680-81 (8th Cir. 1995).

Espinal asserts that immigration authorities' failure to include a time and date in the 2004 NTA was a fundamental procedural error that prejudiced him. Additionally, because he was not otherwise informed of the process to update his address with immigration authorities, or provided with a change-of-address form, he argues that his removal proceeding occurred at a time and date of which he was unaware. Espinal contends that this ultimately led to an unfair, *in absentia* removal proceeding which resulted in the 2005 removal order without an opportunity for Espinal to present evidence or argue for relief, such as voluntary departure.

Even assuming, without deciding, that there were fundamental procedural errors in the underlying removal proceedings, Espinal has not met his burden in demonstrating actual prejudice—that but for those errors, there was a reasonable likelihood he would not have been deported. See Torres-Sanchez, 68 F.3d at 230. Espinal illegally reentered the United States after lying to immigration authorities about his nationality and being granted voluntary departure to Mexico. After being released on his own recognizance, he did not provide an address, failed to meet with a deportation officer, and later fled to Kansas. Moreover, after the removal order was issued but before Espinal was physically removed from the United States, he was

arrested on multiple occasions and absconded from one state prosecution. He was later taken into custody and removed from the United States following an arrest for assault. In light of these facts, Espinal has failed to convince us that there was a reasonable likelihood that, but for the alleged errors, he would not have been deported from the United States.

Moreover, Espinal's argument concerning voluntary departure is unpersuasive. Even assuming he was eligible for such relief, the decision to grant voluntary departure is at the sole discretion of the Attorney General. See Garcia-Mateo v. Keisler, 503 F.3d 698, 700 (8th Cir. 2007). Because Espinal has no entitlement to voluntary departure, or any other discretionary relief as an alternative to removal, a failure to inform Espinal of the availability of such relief was not a procedural error. See id. Even if it was, there was no prejudice to Espinal in light of the fact that the decision to grant voluntary departure typically requires an IJ to balance the positive and negative equities. See Matter of Gamboa, 14 I. & N. Dec. 244, 248 (BIA 1972). Here, in 2004, Espinal lied to immigration authorities to voluntarily depart to Mexico and subsequently reentered the United States, without permission, within two weeks. He does not point us to any cases in which voluntary departure was granted under similar circumstances. Therefore, even if Espinal should have been advised of the possibility of voluntary departure relief, he did not suffer any prejudice because, under these facts, we think that it was highly unlikely that he would have been granted voluntary departure.

Accordingly, we find no fundamental procedural error that resulted in prejudice to Espinal.

Finally, the district court did not abuse its discretion in disposing of this issue without a hearing. See Santos-Pulido, 815 F.3d at 445 (noting that we review this issue for an abuse of discretion). There does not appear to be a dispute over the type of notice Espinal received prior to the underlying removal hearing, and Espinal does

-6-

not contest the fact that he did not provide an address and that he failed to meet with a deportation officer.  Further, he does not clearly identify what evidence, if any, he would have presented to the district court had a hearing been held.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____